**IRVING INDEPENDENT SCHOOL DISTRICT and the County of Dallas, Texas, Plaintiffs,**

v.

**PACKARD PROPERTIES, LTD., et al., Defendants.**

**Civ. A. No. CA3–88–1611–D.**

United States District Court, N.D. Texas, Dallas Division.

July 18, 1990.

James W. Deatherage of Power, Deatherage & Blankenship, Irving, Tex., for plaintiff Irving Independent School Dist.

DeMetris Sampson and Sydna H. Gordon of Dallas, Tex., for plaintiff the County of Dallas, Tex.

Forrest Smith, Mark Simon, and Iwana Rademaekers of Arter & Hadden, Dallas, Tex., for the FDIC.

FITZWATER, District Judge:

In this civil action the court decides that the Federal Deposit Insurance Corporation ("FDIC") cannot be held liable for Texas state law penalty and interest obligations arising from nonpayment of ad valorem taxes.

I

Plaintiff Irving Independent School District ("Irving") initiated this action in Texas state court against defendants Packard Properties, Ltd., Montfort Savings, and

Carlyle Management, Inc. In its state court petition Irving sought recovery of approximately $35,000 in unpaid ad valorem taxes on certain real property located within the boundaries of Irving's taxing district. The County of Dallas, Texas ("Dallas County") subsequently intervened as a party-plaintiff.

Thereafter, Irving amended its petition to add the Federal Savings and Loan Insurance Corporation ("FSLIC"), as receiver for Vernon Savings and Loan Association, F.S.A. ("New Vernon"), as a defendant. The FSLIC removed the state action to this court pursuant to 12 U.S.C. § 1730(k)(1)(C). In 1989 all assets and liabilities of the FSLIC were transferred to the FSLIC Resolution Fund by operation of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Pub.L. No. 101–73, 1989 U.S.Code Cong. & Admin. News (103 Stat.) 183 (1989). Pursuant to FIRREA § 401 the FDIC has succeeded the FSLIC as receiver for New Vernon.

The FDIC now moves for summary judgment, contending it cannot be held liable for certain penalties and interest authorized by the Texas Tax Code when taxes are not paid. Irving responds that the FDIC is liable for penalties, interest, and collection fees,[1] as well as the unpaid tax, because the former are compensatory in nature and as such are not within the proscription against assessing penalties against the FDIC. Dallas County contends the Tax Injunction Act, 28 U.S.C. § 1341, prohibits the court from interfering with the County's collection of taxes and thereby divests this court of jurisdiction. Dallas County additionally contends statutory interest and penalties are properly collectible from the FDIC.

vests the court of jurisdiction over this action.

Section 1341 provides that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." Dallas County contends the FDIC, by challenging the County's efforts to collect the taxes due, has restrained the collection of taxes and thus implicated the jurisdictional bar of § 1341.

 Section 1341 does not, however, preclude federal court jurisdiction over a suit brought to collect a state tax rather than to enjoin, suspend, or restrain the collection of taxes. *Louisiana Land & Exploration Co. v. Pilot Petroleum Corp.,* 900 F.2d 816, 818 (5th Cir.1990). The present lawsuit is clearly one brought by taxing authorities to collect taxes.

 The court also holds the case was properly removed notwithstanding § 1341. In *Carrollton–Farmers Branch Indep. School Dist. v. Johnson & Cravens,* 858 F.2d 1010 (5th Cir.1988), *modified,* 867 F.2d 1517, *vacated on other grounds,* 889 F.2d 571 (1989), the Fifth Circuit rejected the argument that § 1341 precluded the FSLIC from removing to federal court a state action seeking recovery of delinquent ad valorem taxes. 858 F.2d at 1014, 1015. The circuit court held that the FSLIC's special removal provision[2] operated as an exception to § 1341 in all but limited cases and provided federal jurisdiction. *Id.* at 1015. The same analysis applies here. The FSLIC was authorized by § 1730(k)(1) to remove the state action to this court "notwithstanding any other provision of law."

## II

### A

The court first considers whether the Tax Injunction Act, 28 U.S.C. § 1341, di-

### B

Concluding there is no jurisdictional impediment, the court next determines whether the FDIC can be liable for statutory

---

1. The court includes costs of collection in its discussion of penalties because such costs are treated as a penalty by Tex. Tax Code Ann. § 33.07(a) (Vernon 1982). *See infra* n. 7.

2. Prior to the enactment of FIRREA, the FSLIC's removal powers were prescribed by 12 U.S.C. § 1730(k)(1).

penalties and interest imposed by Texas law.

### 1

A state cannot tax the United States or a federal instrumentality absent congressional authorization. *E.g., First Agricultural Nat'l Bank of Berkshire County v. State Tax Comm'n*, 392 U.S. 339, 340, 88 S.Ct. 2173, 2174, 20 L.Ed.2d 1138 (1968); *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819). The power of a state to impose taxes on real property owned by the FDIC is provided in 12 U.S.C. § 1825. Prior to the enactment of FIRREA, § 1825 exempted the FDIC from all taxation imposed by any state, county, municipality, or local taxing authority, with the exception that "any real property of the [FDIC] shall be subject to State, Territorial, County, municipal, or local taxation to the same extent according to its value as other real property is taxed." A state's authority to tax the FSLIC was governed by an identical provision. *See* 12 U.S.C. § 1725(e) (1989).

In enacting FIRREA Congress repealed § 1725(e) and amended § 1825 by designating the former provision as subsection (a) and adding subsections (b)-(d). Section 1825(b) [3] now applies directly to the FDIC acting as receiver. The FDIC contends § 1825(b)(3) makes clear that it is not liable for penalties and interest and argues plaintiffs' claims for such relief under Texas law must fail. Irving and Dallas County respond that the amounts sought are purely compensatory in nature and do not constitute penalties or interest within the meaning of § 1825(b)(3).[4]

### 2

The determination whether the funds plaintiffs seek constitute penalties or interest within the meaning of § 1825(b)(3) is a federal question, the resolution of which is guided by reference to Texas state law. *See Reconstruction Finance Corp. v. Beaver County, Pa.*, 328 U.S. 204, 207–210, 66 S.Ct. 992, 994–996, 90 L.Ed. 1172 (1946); *Reconstruction Finance Corp. v. Texas*, 229 F.2d 9, 11 (5th Cir.), *cert. denied*, 351 U.S. 907, 76 S.Ct. 695, 100 L.Ed. 1442 (1956). Plaintiffs sue for penalties (including costs of collection) and interest on the unpaid ad valorem taxes pursuant to Tex. Tax Code Ann. §§ 33.01(a),[5] 33.01(c),[6]

---

**3.** 12 U.S.C. § 1825(b):

When acting as a receiver, the following provisions shall apply with respect to the [FDIC]:

(1) The [FDIC] including its franchise, its capital, reserves, and surplus, and its income, shall be exempt from all taxation imposed by any State, county, municipality, or local taxing authority, except that any real property of the [FDIC] shall be subject to State, territorial, county, municipal, or local taxation to the same extent according to its value as other real property is taxed, except that, notwithstanding the failure of any person to challenge an assessment under State law of such property's value, such value, and the tax thereon, shall be determined as of the period for which such tax is imposed.

(2) No real property of the [FDIC] shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of the [FDIC], nor shall any voluntary lien attach to the property of the [FDIC].

(3) The [FDIC] shall not be liable for any amounts in the nature of penalties or fines, including those arising from the failure of any person to pay any real property, personal property, probate, or recording tax or any recording or filing fees when due.

This subsection shall not apply with respect to any tax imposed (or other amount arising) under Title 26.

**4.** Irving also appears to contend that § 1825(b)(3) is inapplicable to this case, asserting the court should not apply § 1825(b)(3) retroactively to give the FDIC "a windfall at the expense of state and local government and their taxpayers." Resp. at 7. As the court explains *infra,* the predecessor to the pre-FIRREA version of § 1825 was construed long ago to prohibit the imposition of penalties and interest against the Reconstruction Finance Corporation, a predecessor to the FDIC. Section 1825(b)(3), in its present form, simply codifies that result. Assuming *arguendo* the inapplicability of § 1825(b)(3), the analysis and result the court reaches today remain the same under the pre-FIRREA version of § 1825.

**5.** Section 33.01(a):

A delinquent tax incurs a penalty of six percent of the amount of the tax for the first calendar month it is delinquent plus one percent for each additional month or portion of a month the tax remains unpaid prior to July 1 of the year in which it becomes delinquent. However, a tax delinquent on July 1 incurs a total penalty of twelve percent of the amount of the delinquent tax without regard to the number of months the tax has been delinquent.

**6.** Section 33.01(c):

and 33.07(a)[7] (Vernon 1982). The court must decide whether the amounts in question—denominated as penalties and interest in §§ 33.01 and 33.07—are "in the nature of penalties or fines" within the meaning of § 1825(b)(3).

The Fifth Circuit has decided this question with respect to the precursor statute of §§ 33.01 and 33.07. In *Reconstruction Finance Corp. v. Texas* the state of Texas sued the Reconstruction Finance Corporation ("RFC") to recover unpaid ad valorem taxes and penalties and interest that had accrued under former Tex.Civ.Stat.Ann. art. 7336 (now codified in Tex. Tax Code Ann. §§ 33.01 and 33.07). The RFC paid the amount of taxes due, but refused to pay the penalties and interest. The district court found for the taxing authorities and ordered the RFC to pay the disputed amounts. 229 F.2d at 9, 10.

■ The Fifth Circuit reversed. Relying on the general principle that a state cannot tax an instrumentality of the United States without congressional authorization, the circuit court rejected the imposition of penalties and interest against the RFC,[8] expressly stating that "Article 7336 is a penalty statute and the penalties and interest which are authorized thereunder are no part of the tax." *Id.* at 12. The circuit court found no congressional authorization for the imposition of penalties or interest against the RFC, and accordingly held that the term "taxation" as used in the Texas statute did not include penalties and interest. *Id.*

The same analysis applies in the present case. The pertinent provisions of the Texas Tax Code are on their face penalty provisions. Construing the waiver of immunity embodied in § 1825(b) strictly, the court finds no indication that Congress intended the FDIC to be liable for the categories of funds plaintiffs seek in this case. Indeed, § 1825(b)(3) is compelling evidence of Congress' contrary intent. While plaintiffs point to analogous situations where Texas courts have construed certain penalty provisions as compensatory in nature,[9] plaintiffs offer no valid basis for avoiding the Fifth Circuit's express holding that statutory provisions of the type at issue here exact a penalty that is not enforceable against a federal instrumentality.

The court therefore holds the FDIC is not liable for statutory penalties and interest authorized by Tex. Tax Code Ann. §§ 33.01 and 33.07. Plaintiffs' claims for penalties and interest are therefore dismissed.[10]

SO ORDERED.

---

A delinquent tax accrues interest at a rate of one percent for each month or portion of a month the tax remains unpaid.

7. Section 33.07(a):
 A taxing unit or appraisal district may provide, in the manner required by law for official action by the body, that taxes that remain delinquent on July 1 of the year in which they become delinquent incur an additional penalty to defray costs of collection, if the unit or district or another unit that collects taxes for the unit has contracted with an attorney pursuant to Section 6.30 of this code. The amount of the penalty may not exceed 15 percent of the amount of taxes, penalty, and interest due.

8. At that time, the power of the States to tax the RFC was given by 15 U.S.C. § 607 which, like § 1825(b)(1), allowed taxation of "any real property of the [RFC] ... to the same extent according to its value as other real property is taxed."

9. *See Spindletop Oil and Gas Co. v. Parker County,* 738 S.W.2d 715, 722 (Tex.App.1987, writ denied).

10. Pursuant to § 1825(b)(1) the FDIC is liable for the face amount of the unpaid ad valorem taxes, providing it holds the property in question. The court cannot determine from the present record the amount of unpaid taxes or whether the FDIC is contesting its obligation to pay the taxes owed. The court declines to disturb any present liens on the property without further clarification of the status of any unpaid taxes.