**IRVING INDEPENDENT SCHOOL DISTRICT and The County of Dallas, Texas, Plaintiffs,**

v.

**PACKARD PROPERTIES, LTD., et al., Defendants.**

**Civ. A. No. CA3–88–1611–D.**

United States District Court, N.D. Texas, Dallas Division.

April 18, 1991.

---

James W. Deatherage of Power, Deatherage & Blankenship, Irving, Tex., for plaintiff Irving Indep. School Dist.

Sydna Gordan and DeMetris A. Sampson of Heard, Goggan, Blair & Williams, Dallas, Tex., for plaintiff the County of Dallas, Tex.

Mark Simon and Iwana Rademaekers of Arter & Hadden, Dallas, Tex., for defendant Federal Deposit Ins. Corp.

FITZWATER, District Judge:

This suit to recover unpaid ad valorem taxes, penalties, interest, collection costs, and attorney's fees requires the court to interpret 12 U.S.C. § 1825(b), to decide whether a provision of FIRREA[1] that amended former 12 U.S.C. § 1825 should be applied retroactively, and to determine whether plaintiffs may recover their attorney's fees from the Federal Deposit Insurance Corporation ("FDIC"). Having conducted a bench trial on stipulated facts, the court renders judgment in part for the taxing authority-plaintiffs for the reasons assigned.[2]

I

Plaintiffs Irving Independent School District ("Irving") and the County of Dallas, Texas ("Dallas County") sue defendants Packard Properties, Ltd. ("Packard"), a Texas limited partnership, and the FDIC, as successor to the Federal Savings and

1. Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub.L. No. 101–73, 1989 U.S.Code Cong. & Admin. News (103 Stat.) 183.

2. The court sets forth in this opinion its conclusions of law. See Fed.R.Civ.P. 52(a). The facts are stipulated.

Loan Insurance Corporation ("FSLIC"), as receiver for Vernon Savings and Loan Association, F.S.A. ("New Vernon"), seeking to recover unpaid ad valorem taxes, penalties, interest, collection costs, and attorney's fees for taxes assessed on January 1 of 1986–1990, inclusive. Defendant Packard is in bankruptcy.[3] The court therefore dismisses this action as to Packard without prejudice to reinstatement and without affecting the lien rights that the court today holds the plaintiffs have in the property in suit.

The FDIC earlier moved for partial summary judgment establishing it is not liable for penalties (including collection costs) and interest authorized by the Texas Tax Code when taxes are not paid. The court granted the motion and dismissed plaintiffs' claims for penalties and interest as to the FDIC. *Irving Indep. School Dist. v. Packard Properties, Ltd.*, 741 F.Supp. 120, 124 (N.D.Tex.) ("*Irving I*"), *appeal dism'd*, No. 90–1755 (5th Cir. Nov. 7, 1990). The court declined to disturb present liens on the property in question without further clarification of the status of any unpaid taxes. *Id.* at 124 n. 10.

Aside from asking the court to reconsider its decision in *Irving I* and reurging their challenges to this court's subject matter jurisdiction, plaintiffs request that the court render judgment for recovery of unpaid taxes and ancillary relief provided by state law and uphold liens plaintiffs contend they have on the taxed property.[4] The FDIC argues it is not liable for any non-tax remedies available to plaintiffs and

that the liens plaintiffs seek to enforce either did not attach to the property or were extinguished by the FSLIC/FDIC receivership.

The parties have stipulated to the facts. Irving and Dallas County are authorized by law to levy, assess, and collect ad valorem taxes. In the present case, plaintiffs assessed taxes on 3.69 acres of real property described as The Las Brisas Hills Addition (the "Property"). LaCosta Development, Inc. ("LaCosta") owned the Property on January 1, 1986 and January 1, 1987. On April 1, 1987 LaCosta conveyed the Property to defendant Packard. In connection with this conveyance, New Vernon was granted a security interest in the Property. On November 19, 1987 New Vernon failed and the FSLIC was appointed its receiver. On January 1, 1988 Packard held title to the Property. On January 8, 1988 the FSLIC, as receiver for New Vernon, acquired the Property through foreclosure. On January 1, 1989 the FSLIC held title to the Property as New Vernon's receiver.[5] On August 8, 1989, pursuant to FIRREA, the FDIC succeeded the FSLIC as New Vernon's receiver. On January 1, 1990 the FDIC as receiver owned the Property. The Property is currently held by the FDIC as an asset of the New Vernon receivership estate. The taxes, penalties, interest, and collection costs assessed by Irving and Dallas County are currently unpaid and delinquent.[6] Plaintiffs have complied with all conditions precedent under Texas law to their right to levy taxes, penalties, interest, and collection costs.

---

**3.** *See* Joint Pretrial Order at 7, 12. The parties submitted a proposed joint pretrial order prior to docket call. The court has today entered the proposal as the pretrial order.

**4.** Without conceding the validity of the court's decision in *Irving I*, plaintiffs ask the court at least to delete its holding that "Plaintiffs' claims for penalties and interest are therefore dismissed." *See* 741 F.Supp. at 124. Plaintiffs contend this statement inadvertently extinguishes other rights of the plaintiffs. To the extent the court's opinion today does not make pellucid that plaintiffs' claims for penalties and interest (and liens securing such claims) are dismissed only as to the FDIC and that plaintiffs' lien rights are denied in their entirety only as to

tax year 1990, the court hereby expressly clarifies the last sentence of its summary judgment opinion, 741 F.Supp. at 124.

**5.** This fact is not the subject of an express stipulation in the Joint Pretrial Order but the parties have assumed it in their briefing.

**6.** The parties have stipulated that the unpaid taxes due Irving total $104,202.51 for the years 1986–90 and that a reasonable attorney's fee would be 15% of the total of all taxes, penalties, and interest adjudged to be due. They have stipulated that unpaid taxes due Dallas County for the same time period are $25,858.79 and that a reasonable attorney's fee would also be 15% of this total of all ancillary sums adjudged due.

## II

The court begins by setting out the issues that the parties do not dispute or that were resolved in *Irving I.* Plaintiffs seek to recover unpaid ad valorem taxes, penalties, interest, costs of collection, and attorney's fees for tax years 1986–1990. The FDIC concedes it is personally liable for unpaid taxes for calendar years 1989 and 1990.[7] Plaintiffs acknowledge that the FDIC has no tax liability for the years 1986–1988. In *Irving I* the court held the FDIC is not liable for penalties and interest assessed pursuant to Tex.Tax Code Ann. §§ 33.01(a), 33.01(c), and 33.07(a) (Vernon 1982).

The questions that remain for resolution are (1) whether liens for unpaid taxes and related charges that attached to the Property for tax years 1986–1988 remain on the Property; (2) whether tax liens attached to the Property for tax years 1989 and 1990; and (3) whether plaintiffs can recover attorney's fees from the FDIC pursuant to Tex.Tax Code Ann. § 33.48 (Vernon 1982).

### A

■ Plaintiffs contend their liens for unpaid taxes, penalties, interest, costs of collection, and attorney's fees for tax years 1986–88 [8] should not be dismissed because the liens for these sums attached on Janu-

ary 1 of each respective year and these dates precede acquisition of the Property by the FSLIC and FDIC. Texas law imposes a lien on property on January 1 of each year to "secure the payment of all taxes, penalties, and interest ultimately imposed for the year on that property." Tex.Tax Code Ann. § 32.01 (Vernon 1982). 12 U.S.C. § 1825(b)(2) [9] expressly prohibits attachment of an involuntary lien to real property held by the FDIC as receiver. Plaintiffs argue, *inter alia,* that the prohibition of § 1825(b)(2) against attachment of involuntary liens is inapplicable because the liens in question attached prior to the FSLIC's obtaining ownership of the Property at foreclosure.[10] The FDIC responds that plaintiffs are seeking to impose *in rem* liability upon the Property that contravenes § 1825(b)(2). It posits that a tax lien will constitute a cloud on its title and will "effectively destroy the [FDIC's] ability to liquidate this property." FDIC Br. at 5.

In construing § 1825(b)(2), the court must begin with the language of the statute itself. *See Prince George Joint Venture v. Sunbelt Sav., F.S.B.,* 744 F.Supp. 133, 134 (N.D.Tex.1990) (citations omitted). The court seeks to determine the intent of Congress from the words of the legislative branch. *Id.* Section 1825(b)(2) provides, in pertinent part:

> property's value, such value, and the tax thereon, shall be determined as of the period for which such tax is imposed.
>
> (2) No real property of the [FDIC] shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of the [FDIC], nor shall any involuntary lien attach to the property of the [FDIC].
>
> (3) The [FDIC] shall not be liable for any amounts in the nature of penalties or fines, including those arising from the failure of any person to pay any real property, personal property, probate, or recording tax or any recording or filing fees when due.
>
> This subsection shall not apply with respect to any tax imposed (or other amount arising) under Title 26.

7. *This amounts to $17,944.20 to Irving for 1989 and $19,637.55 for 1990 and $6,234.45 to Dallas County for 1989 and $6,776.66 for 1990.*

8. Dallas County's brief refers to tax years 1987 and 1988. *See* Dallas Co. Br. at 8. In light of the Joint Pretrial Order and other briefing, the court assumes plaintiffs seek to recover for tax year 1986 as well.

9. 12 U.S.C. § 1825(b):

When acting as a receiver, the following provisions shall apply with respect to the [FDIC]:

(1) The [FDIC] including its franchise, its capital, reserves, and surplus, and its income, shall be exempt from all taxation imposed by any State, county, municipality, or local taxing authority, except that any real property of the [FDIC] shall be subject to State, territorial, county, municipal, or local taxation to the same extent according to its value as other real property is taxed, except that, notwithstanding the failure of any person to challenge an assessment under State law of such

10. Plaintiffs acknowledge that § 1825(b)(2) prohibits them from foreclosing their liens while the FDIC owns the Property. *See* Dallas Co. Br. at 9; Irving Rep. Br. at 1 (adopting Dallas Co. Br.). After FDIC ownership terminates, they intend to foreclose their liens if the taxes have not been paid. *See id.*

When acting as a receiver, the following provisions shall apply with respect to the [FDIC]:

   \*     \*     \*     \*     \*     \*

No property of the [FDIC] shall be subject to ... foreclosure ... nor shall any involuntary lien attach to the property of the [FDIC].

The plain language of this statute means no involuntary lien attaches to property held by the FDIC when the FDIC is acting as a receiver. The court therefore agrees with plaintiffs that the liens for 1986–1988 that arose prior to the FSLIC/FDIC receivership for unpaid taxes, penalties, interest, and collection costs remain on the Property.

If the FDIC is troubled that the presence of such liens compromises its ability to market property, it must seek appropriate relief from the Congress. Section 1825(b)(1) contemplates that real property held by the FDIC in receivership will generally be subject to state and local taxation, with specified exceptions. The statute does not purport to prevent involuntary liens from attaching to real property prior to when the FDIC begins "acting as a receiver." Essentially, the statute grants the FDIC as receiver a safe harbor against involuntary tax and other liens while it holds property. But as in the case of other assets it acquires upon the failure of a financial institution—and where settled protective doctrines like the *D'Oench, Duhme* [11] rule of estoppel and federal common law holder in due course doctrine are inapplicable—the FDIC takes each asset in its burdened condition. Its inability to market the asset represents but one aspect of the grim reality that faces the FDIC upon the failure of a financial institution.

The court's decision is in this respect consistent with Judge Black's recent opinion in *Fort Bend County Mun. Utility Dist. No. 30 v. Gayle*, 755 F.Supp. 746 (S.D.Tex.1990). In *Gayle* a municipal utility district brought suit against two individuals and their mortgage lenders (two banks) to collect delinquent ad valorem taxes, penalties, interest, and attorney's fees, *id.* at 746–47, for tax years 1987, 1988, and 1989, *id.* at 748. The banks had been declared insolvent prior to the date suit was filed in 1989. *Id.* at 747. Two other taxing units intervened to recover similar relief. *Id.* The FDIC as receiver for one of the lender-banks became the owner of the property in 1990 when it purchased the property at two foreclosure sales. *Id.*

The FDIC moved for summary judgment, arguing it was entitled to sovereign immunity from imposition of penalties, interest, and attorney's fees and any resulting liens which arose therefrom. *Id.* at 747. From the court's opinion, it does not appear the FDIC contested that liens that had attached prior to the time the FDIC assumed ownership in 1990 continued to be valid encumbrances on the property. Judge Black held the FDIC was not personally liable for taxes for the years 1987–89 (prior to its ownership), *id.* at 748, "but a lien for taxes for tax years 1987, 1988 and 1989 remains against the real property." *Id.* [12]

### B

The court next considers whether a lien attached to the Property for taxes unpaid during tax years 1989 and 1990. This is a different issue because the assessments of taxes for these years, and the attachment of any liens, clearly arose during the FSLIC/FDIC receivership.

Plaintiffs argue the Congress waived federal immunity from local taxation in

---

**11.** *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942).

**12.** Judge Black also held that no liens for penalties, fines, interest, attorney's fees, costs, and abstract and research fees would exist against the property while title to the real property was in the FDIC. 755 F.Supp. at 748. Because this limitation only precludes such liens "while title ... is in the FDIC," the *Gayle* decision appears to permit such liens to reattach when the FDIC transfers ownership of the property. *Id.* This court does not view the effect of *Gayle* to be inconsistent in this regard with the decision the court reaches today, although the court holds such liens continue legally to exist even if the liens cannot be foreclosed while the FDIC as receiver is the property owner.

§ 1825(b)(1) and that since the right to assess taxes is illusory without an effective ability to collect them, Congress did not intend to prevent liens from attaching to real property held by the FDIC as receiver. The FDIC counters that because it has no *in personam* liability for taxes, to impose *in rem* liability in the form of a lien is to accomplish the same result and thereby to vitiate the intent of the statute.

The court finds § 1825(b)(2) to be quite plain in its prohibition against attachment of any involuntary lien to property held by the FDIC when acting as a receiver. The court therefore holds the plaintiffs have no lien interests in the 1990 ad valorem taxes. They must look to the FDIC personally to recover.

The issue must be addressed differently with respect to 1989 taxes. On January 1, 1989 FIRREA had not been enacted. The version of § 1825(b)(2) on which the FDIC relies was not in effect. Former 12 U.S.C. § 1825, *see* Federal Deposit Insurance Act, Pub.L. No. 81–797, 64 Stat. 873, made FDIC real property subject to local taxation "to the same extent according to its value as other real property is taxed." *Id.* § 15, 64 Stat. at 890. But it contained no similar exemption against the attachment of involuntary liens. This court has declined to apply FIRREA retroactively absent evidence of unequivocal Congressional intent that it should do so. *See Senior Unsecured Creditors' Comm. v. FDIC,* 749 F.Supp. 758, 773–74 (N.D.Tex.1990). The court discerns no reason to apply FIRREA to nullify a lien that validly attached prior to any receivership and the FDIC has offered no persuasive rationale for doing so.[13] The court therefore holds as a matter of law that plaintiffs' claims for unpaid taxes for 1989 are secured by liens on the Property.

#### C

The court turns finally to the question whether plaintiffs are entitled to recover attorney's fees on the basis of Tex.Tax Code Ann. § 33.48 (Vernon 1982). Section 33.48(a)(4) of the Tax Code permits a taxing unit to recover as "costs and expenses in a suit to collect a delinquent tax ... reasonable attorney's fees approved by the court and not exceeding 15 percent of the total amount of taxes, penalties, and interest adjudged due the unit." Section 33.48(a)(4) is unlike § 33.07(a), which this court held in *Irving I* to be a penalty provision. *See* 741 F.Supp. at 124. Section 33.07(a) permits a taxing unit that has contracted with an attorney to provide that taxes that remain delinquent on July 1 "incur an additional *penalty* to defray costs of collection." (Emphasis added); *reprinted* at 741 F.Supp. at 124 n. 7. In contrast, § 33.48(a) refers to attorney's fees not as a penalty, but as "costs and expenses in a suit." Notwithstanding the inapplicability of the holding in *Irving I* to plaintiffs' § 33.48(a) claim, the court denies plaintiffs' present request for attorney's fees.

This court held in *FDIC v. Addison Airport of Tex., Inc.,* 733 F.Supp. 1121, 1126 (N.D.Tex.1990), that attorney's fees are recoverable against the FDIC only pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d). They are not otherwise available because the FDIC, as an agency of the United States, enjoys sovereign immunity from such liability. 733 F.Supp. at 1122–23 & n. 4. Plaintiffs have made no attempt to comply with the procedural requirements that apply to a § 2412(d) fee request. *See id.* at 1124. Their request for attorney's fees is therefore denied without prejudice to submitting a proper § 2412(d) fee request, and is otherwise denied with prejudice.

#### III

Accordingly, for the reasons stated, Irving is entitled to recover judgment from the FDIC in the sum of $37,581.75, taxable

---

**13.** This holding is not inconsistent with the court's determination in *Irving I* that plaintiffs could not recover penalties and interest regard-

less whether FIRREA or predecessor law applied. As to penalties and interest, FIRREA

costs of court,[14] and post-judgment interest. Dallas County is entitled to recover judgment from the FDIC in the sum of $13,011.11, taxable costs of court, and post-judgment interest.

Irving and Dallas County shall each have a lien against the Property to the extent of (1) unpaid 1986–1988 taxes, penalties, interest, collection costs, and attorney's fees and (2) unpaid 1989 taxes. Plaintiffs shall have no right to foreclose upon the Property while it remains in FDIC receivership.

Pursuant to Fed.R.Civ.P. 54(b), given the Packard bankruptcy, the FDIC's clear liability for 1989–90 taxes, and the lack of injury to the FDIC due to plaintiffs' inability to foreclose on their liens, the court expressly determines there is no just reason for delay and directs entry of a final judgment today.

---

"simply codifie[d]" pre-FIRREA law. *Irving I*, 741 F.Supp. at 123 n. 4.

**14.** Taxable costs of court are those assessed by the clerk of court in accordance with the federal rules. They are not "costs of collection" which

are unavailable against the FDIC. *See Irving I*, 741 F.Supp. at 123–24.