**CARROLLTON–FARMERS BRANCH INDEPENDENT SCHOOL DISTRICT and City of Farmers Branch, Counterdefendants,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, as Manager of the FSLIC Resolution Fund, as Receiver for First Savings and Loan Association of Burkburnett, Texas, Counterplaintiff.**

Civ. A. No. CA3–87–2001–D.

United States District Court,
N.D. Texas,
Dallas Division.

Nov. 1, 1991.

Earl Luna (argued) and Tana K. Van Hamme of Law Offices of Earl Luna, P.C., Dallas, Tex., for Carrollton–Farmers Branch Ind. Sch. Dist.

Christopher J. Caso and S. Reid Heller (argued) of Hutchison Boyle Brooks & Fisher, Dallas, Tex., for City of Farmers Branch, Tex.

Lawrence H. Richmond (argued), FDIC Counsel, Washington, D.C. and Robert B. Wellenberger of Thompson, Coe, Cousins & Irons, Dallas, Tex., for FDIC.

FITZWATER, District Judge:

In this civil action, the court must decide whether ad valorem tax penalty liens that attach to real property prior to a Federal Deposit Insurance Corporation ("FDIC") receivership are extinguished by the receivership. The court concludes the liens are not extinguished and that they remain upon the property until released in accordance with applicable state or local law.

## I

The procedural background of this case is necessarily recounted in some detail to bring the action to the narrow, if important, issue that remains for decision.

Counterdefendants Carrollton–Farmers Branch Independent School District ("CFBISD") and the City of Farmers Branch, Texas ("Farmers Branch") brought suit in Texas state court to recover ad valorem taxes, penalties, interest, collection costs, and attorney's fees for calendar years 1983–86 owed on real property located in Farmers Branch, Texas (the "Property"). The Property is located within each taxing authority's jurisdiction. The taxing authorities sued First Savings and Loan Association of Burkburnett, Texas ("First Savings") because First Savings held a second lien on the Property. The FSLIC became First Savings' receiver after the thrift failed; the FSLIC foreclosed on the lien in June 1987. It thereafter removed the action to this court and moved for dismissal on the basis of the *Hudspeth*[1] doctrine, which was then the law of this circuit. This court dismissed the claims against the FSLIC and remanded the balance of the case to state court. The Fifth Circuit affirmed the dismissal. *See Carrollton–Farmers Branch Indep. Sch. Dist. v. Johnson & Cravens,* 858 F.2d 1010 (1988), *modified,* 867 F.2d 1517 (5th Cir. 1989). Thereafter, in *Coit Independence Joint Venture v. FSLIC,* 489 U.S. 561, 109 S.Ct. 1361, 103 L.Ed.2d 602 (1989), the Supreme Court overruled *Hudspeth* in pertinent part. The Fifth Circuit then recalled its mandate of affirmance, vacated its prior opinion, and remanded this case "for further proceedings in accordance with *Coit.*" *Carrollton–Farmers Branch Indep. Sch. Dist. v. Johnson & Cravens,* 889 F.2d 571, 572 (5th Cir.1989) (per curiam).

While the appeal was pending, the FSLIC sold the Property to Lone Star Life Insurance Company ("Lone Star"), which in turn conveyed the Property to Atlan Plastics, Inc. ("Atlan"). As a condition of the sale, the FSLIC agreed to indemnify and hold Atlan "harmless from and against any and all claims, costs, and expenses arising out of" tax claims made by CFBISD and Farmers Branch with respect to taxes owed on the Property. *See* Agreement at ¶¶ 3–4 (Ex. A to Farmers Branch Mot. Dis.). The FSLIC also conveyed the Property "subject to all liens which survived Lone Star's foreclosure of the Property and subject to any and all tax liens on the Property." *Id.* ¶ 3.

The taxing authorities contended before the Fifth Circuit that the sale of the Property affected this court's removal jurisdiction. The circuit court rejected the argument, observing in *dictum* that the sale "appears to raise more a question of mootness than an issue of federal subject matter jurisdiction." *Carrollton–Farmers Branch,* 889 F.2d at 572. The court also thought it important for jurisdictional purposes that the FSLIC had sold the Property prior to resolution of the question whether priority under federal law was to be accorded the taxing authorities' claims, *id.* at 572–73, and that there apparently remained in the case questions of federal law concerning the taxing authorities' right to proceed against the purchasers of the Property, *id.* at 573.

Also during the pendency of the appeal, the FDIC succeeded the FSLIC as receiver in accordance with the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub.L. No. 101–73, 1989 U.S.Code Cong. & Admin.News (103 Stat. 183), 86 ("FIRREA"). The FDIC ("FDIC–Receiver") became a party in its capacity as manager of the FSLIC Resolution Fund, as Receiver for First Savings.

Following remand from the Fifth Circuit, the FDIC–Receiver filed the counterclaim that the taxing authorities now move to dismiss. The portion of the case (the action of CFBISD and Farmers Branch to recover unpaid taxes and ancillary relief) that this court remanded to Texas state

---

**1.** *North Miss. Sav. & Loan Ass'n v. Hudspeth,* 756 F.2d 1096 (5th Cir.1985), *cert. denied,* 474 U.S. 1054, 106 S.Ct. 790, 88 L.Ed.2d 768 (1986).

court is still pending in state court.[2] Therefore, only the FDIC–Receiver's counterclaim remains to be litigated before this court.

The FDIC–Receiver originally sought declaratory judgment that the taxing authorities' claims for unpaid taxes and ancillary relief, as well as their liens on the Property, were converted to claims against the receivership estate. According to the FDIC–Receiver, the taxing authorities' claims were subordinate to the lien that secured FSLIC–Corporate's claim against First Savings. The FDIC–Receiver now contends, and seeks judgment declaring, that the liens for penalties (including interest, collection costs, and attorney's fees) are extinguished. The FDIC–Receiver no longer argues in this case that the liens securing the ad valorem taxes themselves have been abrogated; it states in a pre-argument letter to the court that it "will recognize the priority claim of the taxing authorities for taxes."

Counterdefendants CFBISD and Farmers Branch move to dismiss the counterclaim. CFBISD argues the action is moot because the FSLIC sold the Property; CFBISD therefore reasons there is no longer a case or controversy over which the court has jurisdiction. Farmers Branch similarly urges dismissal of the counterclaim on the grounds that the FDIC–Receiver no longer has standing and that the case has become moot. Farmers Branch moves in the alternative for summary judgment as to the counterclaim, contending its liens remain on the Property and have not been converted to equitable claims, the liens continue notwithstanding the sale of the Property, and the liens are superior to the FDIC–Receiver's interest.

## II

### A

■ The court considers first the taxing authorities' related contentions that the FDIC–Receiver lacks standing to prosecute

its counterclaim and that the counterclaim has been mooted by the sale of the Property.

CFBISD and Farmers Branch argue there is no case or controversy for adjudication because the unpaid taxes in question are for years prior to the date the FSLIC acquired an ownership interest in the Property, the FSLIC and the FDIC–Receiver no longer own any interest in the Property, and the tax liens have followed the Property to the new owner. They therefore reason there is no dispute to be resolved in the present federal court litigation. The taxing authorities concede the FDIC–Receiver agreed to indemnify Lone Star and Atlan, but posit that the FDIC–Receiver's interest as an indemnitor is insufficient to confer standing or to render the matter a live case or controversy. They contend this is so because they were not parties to the FDIC–Receiver's agreement with Lone Star and Atlan, and are therefore neither bound by, nor have an interest in, the agreement. The taxing authorities contend Atlan—who is not a party to this case—is liable as the current Property owner for the taxes in question. They argue there is no exception to the mootness doctrine that would make this case the subject of review and confer Article III jurisdiction upon this court.

The FDIC–Receiver responds that the case is not moot, and it has standing to sue for a declaratory judgment, because the FSLIC—now succeeded by the FDIC–Receiver—agreed to indemnify the Property owner. Therefore, any ruling the court makes regarding Atlan's liability for taxes, penalties, interest, collection costs, and attorney's fees for calendar years 1983–86 has a direct impact upon the FDIC–Receiver. On the basis of *Dawson v. Childs*, 665 F.2d 705 (5th Cir. Unit A 1982), the FDIC–Receiver urges that its counterclaim presents a justiciable controversy.

In *Dawson* certain taxpayers sued in federal court challenging taxes levied against them by local taxing authorities and seeking to enjoin enforcement of tax liens. *Id.*

---

2. At oral argument of the present motions, counsel advised the court that the state case is awaiting the outcome of this action.

at 707. The government—which had owned the property in question—contractually agreed with the taxpayers to pay any taxes against the property during the time of its ownership. *Id.* at 708. The government sought a declaratory judgment that the property was not subject to state or local taxation. *Id.* at 707. The district court agreed with the government, declaring the taxing of federal property unconstitutional. *See id.* at 710. After the circuit court held the taxpayers' suit was precluded by the Tax Injunction Act, *id.*, the taxing authorities urged that the government's constitutional claim should similarly be dismissed, *id.* The Fifth Circuit disagreed, holding "that claim presents a justiciable federal case or controversy." *Id.* The panel did not expressly decide whether the government's status (which was essentially that of an indemnitor) conferred standing upon it, but the court at least implicitly assumed so, for it thought it "reasonable" for the government "to assert its argument for a declaratory judgment that the property was not subject to taxation." *Id.*

Even if the implicit holding of *Dawson* is insufficient to resolve the standing and mootness arguments in favor of the FDIC–Receiver, the reasoning of a Tenth Circuit case is adequate. In *Phico Ins. Co. v. Providers Ins. Co.*, 888 F.2d 663 (10th Cir. 1989), the question presented was whether an insurance carrier had standing to sue to recover funds paid to an insured. *Id.* at 665. The defendant (also an insurance company) had argued in the district court that the plaintiff-insurer did not have standing to contest the defendant's contract with the insured because the plaintiff-insurer was not a party to that contract. *Id.*

The Tenth Circuit analyzed the standing requirement of Article III of the Constitution. It held the prerequisites for standing are met if a party shows it has personally suffered some actual or threatened injury that can be traced to the challenged action and is likely to be redressed by a favorable decision. *Id.* at 666. The circuit court upheld as correct the district court's determination that the plaintiff-insurer had

standing—notwithstanding that it was not a party to the contract between the defendant and the insured—because it could be held liable to the insured. *Id.*

In the present case the FDIC–Receiver, as successor to the FSLIC, is contractually obligated to hold Atlan harmless from and against any and all claims, costs, and expenses arising out of the taxing authorities' claims. The taxing authorities continue to press their claims for penalties (secured by liens) against the Property. The FDIC–Receiver is contractually obligated to Atlan for any such liability. It therefore has standing to challenge the claims and its action is not mooted by the sale of the Property to a third party.

### B

Having decided the FDIC–Receiver has standing to prosecute the counterclaim and that its action is not moot, the court now turns to the question whether the taxing authorities' liens for unpaid penalties, costs of collection, interest, and attorney's fees for calendar years 1983–86 remain upon the Property.

### 1

To frame the question presented, the court begins by summarizing the pertinent holdings of two prior opinions in another case. In *Irving Indep. Sch. Dist. v. Packard Properties, Ltd.*, 741 F.Supp. 120 (N.D.Tex.) ("*Irving I*"), *appeal dism'd*, No. 90–1755 (5th Cir. Nov. 7, 1990), this court held the FDIC is not liable for ad valorem tax penalties (including interest and collection costs) authorized by the Texas Tax Code. *Id.* at 124. The taxing authorities had argued these sums were compensatory in nature and therefore should not be deemed penalties. *Id.* at 122. This court disagreed. It determined the Texas Tax Code provisions were "on their face penalty provisions" and held they were barred as to the FDIC. *Id.* at 124.

Thereafter, the balance of the case was tried to the court on stipulated facts. *See Irving Indep. Sch. Dist. v. Packard Properties, Ltd.*, 762 F.Supp. 699 (N.D.Tex.) ("*Irving II*"), *appeal docketed*, No. 91–

1582 (5th Cir.1991). In *Irving II* the court determined, *inter alia,* whether the taxing authorities' liens for unpaid taxes, penalties, interest, collection costs, and attorney's fees were extinguished as to property held by the FDIC as receiver. Five tax years (1986–90) were in issue. *See id.* at 701. On January 1, 1986 and January 1, 1987 a private corporation owned the property; on January 1, 1988 a limited partnership held title to the property; the FSLIC held title on January 1, 1989 and the FDIC owned the property on January 1, 1990. *See id.*

The court held the liens that arose in 1986–88—prior to FSLIC/FDIC receivership—for unpaid taxes, penalties, interest, collection costs, and attorney's fees remained on the property. *Id.* at 703. The court reasoned that 12 U.S.C. § 1825(b)(2) [3] prohibited the attachment of involuntary liens only "when the FDIC is acting as a receiver." *Id.* Because neither the FDIC nor the FSLIC was acting as receiver for the property on the pertinent dates in 1986–88, the court held the liens attached to, and remained upon, the property. *Id.* The court also recognized—as did the taxing authorities—that the taxing authorities could not foreclose these liens while the FDIC owned the property as receiver. *Id.* at 702 n. 10 & 705. The court similarly held with respect to unpaid 1989 taxes that a lien secured the payment of these taxes because the pertinent version of § 1825(b)(2) was not in effect and FIRREA would not be applied retroactively. *Id.* at 704. The court held that no lien attached for 1990 taxes because § 1825(b)(2) fully applied. *Id.*

Both the taxing authorities and the FDIC have appealed parts of the court's decisions in *Irving I* [4] and *Irving II.* The FDIC–Receiver informs the court in the present case that its appeal of *Irving II* is limited to the contention that the court erred in holding the liens to secure payment of penalties, interest, collection costs, and attorney's fees for calendar years 1986–88 are not precluded by § 15(b) of the Federal Deposit Insurance Act, 12 U.S.C. § 1825(b). The FDIC–Receiver otherwise agrees with *Irving II* and fully concurs with *Irving I.* CFBISD and Farmers Branch embrace the portions of *Irving II* that are favorable to taxing authorities. They disagree with *Irving I.*

At the time *Irving II* was decided, the present motions were pending before the court. The court solicited additional briefs from the parties concerning the effect of *Irving II* upon the issues to be decided here. Given the importance of the questions presented in these cases, and after concluding preliminarily that the FDIC–Receiver was advancing in the instant case certain arguments not made in *Irving II,* [5] the court scheduled oral argument of the present motions. In doing so it requested that the FDIC's Office of General Counsel advise the court regarding the FDIC's position on the issues in today's case that are governed by *Irving II.*

2

■ The court now turns to the one issue that remains part of the FDIC–Receiver's counterclaim: whether liens for ad valorem tax penalties [6] that are fixed upon real property prior to an FDIC receivership are extinguished by the receivership.

---

**3.** 12 U.S.C. § 1825(b)(2):
When acting as a receiver.... [n]o property of the [FDIC] shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of the [FDIC], nor shall any involuntary lien *attach* to the property of the [FDIC].

**4.** The appeal of *Irving I* was dismissed because this court's order was not final and appealable. The court's decision in *Irving I* is challenged as part of the appeal taken following *Irving II.*

**5.** The FDIC is often represented by separate law firms in different cases. The FDIC's attorneys

in *Irving II* and the present case are not associated.

**6.** The term "penalties," as used in the remainder of this opinion, means penalties, interest, collection costs, and attorney's fees. The taxing authorities argue, as in *Irving I,* that statutory interest, collection costs, and attorney's fees are not "penalties" within the meaning of Texas and, in turn, federal law. The court adheres to its determination in *Irving I* that all such sums are penalties. *See* 741 F.Supp. at 124.

The FDIC–Receiver's argument is straightforward. To permit liens for penalties to remain upon real property placed in FDIC receivership is effectively to impose the penalties against the FDIC–Receiver itself. In the FDIC–Receiver's view, this violates 12 U.S.C. § 1825(b)(3), which provides in pertinent part that

> [w]hen acting as a receiver, ... [t]he [FDIC] shall not be liable for any amounts in the nature of penalties or fines, including those arising from the failure of any person to pay any real property, personal property, probate, or recording tax or any recording or filing fees when due.

The FDIC–Receiver contends the penalties are essentially imposed upon it because the liens must be satisfied by the purchaser of the property, who will insist that the purchase price be discounted to offset the penalties. The FDIC–Receiver argues that *Irving II* is inconsistent with *Irving I* because *Irving I* holds the FDIC is not liable for penalties while *Irving II*, by concluding pre-receivership penalty liens run with the land, effectively obligates the FDIC–Receiver for such penalties.

The court neither views its prior opinions in *Irving I* and *II* as inconsistent, nor as wrongly decided. The court reaffirms these decisions and rejects the FDIC–Receiver's contention in the present case that a penalty lien that affixes to real property prior to an FDIC receivership is extinguished when the FDIC becomes the receiver.

Although this court did not address § 1825(b)(3) in *Irving II*, that statute's prohibition against liability for penalties does not present a basis for altering the court's analysis. . Section 1825(b)(3) is a provision found within a section of FIRREA that exempts the FDIC from certain taxation and limits its borrowing. Section 1825(a)

sets out the general rule with respect to FDIC tax exemptions. Section 1825(b) specifies three categories of "[o]ther exemptions" that apply to the FDIC "[w]hen acting as a receiver." Section 1825(b)(1)[7] applies to the FDIC, "including its franchise, its capital, reserves, and surplus, and its income." These FDIC assets are exempt from all but limited taxation. Section 1825(b)(2) immunizes "property of the [FDIC]" from being "subject to levy, attachment, garnishment, foreclosure, or sale" without the FDIC's consent, and precludes "any involuntary lien" from attaching to the property of the FDIC. Section 1825(b)(3) does not expressly apply to the FDIC's property; rather, it states, in pertinent part, that the FDIC shall not be liable for "any amounts in the nature of penalties or fines."

By its plain terms, § 1825(b)(3) shields the FDIC–Receiver from personal liability for penalties, but does not reach further to dissolve pre-receivership penalties that, by virtue of market considerations, the receivership estate may be forced to absorb. Any doubt about this understanding of the statute falls away when § 1825(b)(3) is compared with § 1825(b)(2). Both sections apply to the FDIC "[w]hen acting as a receiver," but § 1825(b)(2) prohibits the attachment of involuntary liens against "property of the [FDIC]." By contrast, § 1825(b)(3) makes no mention of FDIC property. It states the FDIC, when acting as a receiver, shall not be liable for penalties.

■ The penalties and liens already fixed upon real property at the time the FDIC becomes receiver are to be distinguished from those that state or local law might attempt to impose against the FDIC or upon property in receivership. By immunizing the FDIC as receiver from personal liability for penalties, prohibiting any

---

**7.** 12 U.S.C. § 1825(b)(1):

When acting as a receiver, ... [t]he [FDIC] including its franchise, its capital, reserves, and surplus, and its income, shall be exempt from all taxation imposed by any State, county, municipality, or local taxing authority, except that any real property of the [FDIC] shall be subject to State, territorial, county, munici-

pal, or local taxation to the same extent according to its value as other real property is taxed, except that, notwithstanding the failure of any person to challenge an assessment under state law of such property's value, such value, and the tax thereon, shall be determined as of the period for which such tax is imposed.

involuntary lien from attaching to receivership property, and precluding the levy, foreclosure, or forced sale of such property, Congress has plainly afforded the FDIC needed discretion and latitude to perform its critical receivership function with relative impunity. Against this salutary array of rights, Congress has balanced the legitimate revenue needs of a multitude of state and local taxing authorities. Taxes and ancillary sums (and the liens that secure them) that lawfully affix to real property prior to any FDIC receivership remain upon the property. Taxing authorities may therefore justifiably count on receipt of secured tax revenues, without concern that a financial institution's subsequent failure may wipe out the income stream. The FDIC as receiver is insulated from personal liability, and receivership property is accorded immunity, so that the FDIC may dispose of these assets in a manner and within a time frame informed by its sound discretion, without liability for penalties or concern for forced sale, attachment of involuntary liens, and the like while the receivership is in place. The effect of this balancing of interests is that the FDIC as receiver takes a real property asset in its pre-receivership condition. That property returns to its burdened state at the time it is conveyed by the receiver to a purchaser. The encumbrance may be different in kind from other impediments that adversely affect the market value of receivership assets, but this simply represents "one aspect of the grim reality that faces the FDIC upon the failure of a financial institution." *Irving II*, 762 F.Supp. at 703. It is a reality Congress has chosen to leave in place.

■ The FDIC–Receiver also urges the court to interpret § 1825(b)(3) to avoid the practical, if not legal, consequences of permitting pre-receivership penalty liens to survive the receivership. In arguing for an effect test, the FDIC–Receiver looks for support to intergovernmental tax immunity jurisprudence. It urges that decisions such as *Lee v. Osceola & Little River Road Improvement Dist. No. 1*, 268 U.S. 643, 45 S.Ct. 620, 69 L.Ed. 1133 (1925), require this court to extinguish liens that effectively render the FDIC–Receiver liable for penalties that are not directly imposed upon it.

The court's reading of intergovernmental tax immunity jurisprudence does not support this argument. Under the doctrine of intergovernmental tax immunity,

> ... the States can never tax the United States directly but can tax any private parties with whom it does business, even though the financial burden falls on the United States, as long as the tax does not discriminate against the United States or those with whom it deals.

*South Carolina v. Baker*, 485 U.S. 505, 523, 108 S.Ct. 1355, 1366, 99 L.Ed.2d 592 (1988); *accord Memphis Bank & Trust Co. v. Garner*, 459 U.S. 392, 397, 103 S.Ct. 692, 695–96, 74 L.Ed.2d 562 (1983); *United States v. New Mexico*, 455 U.S. 720, 734 (1982). In early cases that apply this rule, the Supreme Court held the federal government's immunity from state taxation applied even where a state's taxes or regulations only indirectly impacted and burdened the federal government. *See Panhandle Oil Co. v. Mississippi ex rel. Knox*, 277 U.S. 218, 222, 48 S.Ct. 451, 452–53, 72 L.Ed. 857 (1928) (vendor immune from state sales tax on vendor's proceeds from sale to the United States); *Lee*, 268 U.S. at 646, 45 S.Ct. at 621 (improvements made to federal land unconstitutionally taxed to subsequent purchaser); *Gillespie v. Oklahoma*, 257 U.S. 501, 505, 42 S.Ct. 171, 172–73, 66 L.Ed. 338 (1922) (income derived from federal lease immune from state tax); *Dobbins v. Commissioners of Erie County*, 41 U.S. (16 Pet.) 435, 443, 10 L.Ed. 1022 (1842) (federal employee immune from state tax on salary).

Beginning with *James v. Dravo Contracting Co.*, 302 U.S. 134, 58 S.Ct. 208, 82 L.Ed. 155 (1937), however, the Court began to depart from the approach of its prior cases and toward the current state of the law. In *James* the Court held that a West Virginia tax on a federal contractor's gross receipts did not "interfere in any substantial way with the performance of federal functions and is a valid exaction." *Id.* at 161, 58 S.Ct. at 221. Four years later, in *Alabama v. King & Boozer*, 314 U.S. 1, 62

S.Ct. 43, 86 L.Ed. 3 (1941), the Court upheld a state sales tax imposed on a federal contractor even though the contractor was working under a "cost plus" contract and it was evident the sales tax would be passed on directly to the federal government. *Id.* at 14, 62 S.Ct. at 47–48.

Since *James* the Court has rejected arguments analogous to those presented by the FDIC–Receiver. In *United States v. Alabama*, 313 U.S. 274, 61 S.Ct. 1011, 85 L.Ed. 1327 (1941), the Court refused to declare state liens invalid against land acquired by the government after the liens had attached. The government sued the State of Alabama to gain a marketable title and to remove liens as clouds upon the title that would interfere with the future disposition of the land. The Court held the government was not entitled to this relief. *Id.* at 282, 61 S.Ct. at 1014. In *United States v. City of Detroit*, 355 U.S. 466, 78 S.Ct. 474, 2 L.Ed.2d 424 (1958), the Court upheld a Michigan tax on lessees of federal property even though "[i]t [was] undoubtedly true ... that [the federal government would] not be able to secure as high rentals if lessees [were] taxed for using the property." *Id.* at 472, 78 S.Ct. at 477.

■ Under current law, therefore, a state tax is valid if not imposed directly on the United States—even though the financial burden redounds to the federal government—so long as the tax does not discriminate against the United States or those with whom it deals. In the present case, the penalty liens are not imposed on the FDIC–Receiver itself, cannot be foreclosed upon during the receivership, and do not discriminate against the FDIC–Receiver. The discriminatory effect of the liens is to be determined by analyzing the entire tax structure and not merely by examining the impact on the FDIC in isolation. *See*

*North Dakota v. United States*, 495 U.S. 423, ——, 110 S.Ct. 1986, 1995, 109 L.Ed.2d 420 (1990); *Washington v. United States*, 460 U.S. 536, 542, 103 S.Ct. 1344, 1348–49, 75 L.Ed.2d 264 (1983). Where, as here, the liens are imposed on a basis unrelated to the contractual relationship between the FDIC–Receiver as vendor, and Atlan, as ultimate purchaser, and are fixed equally on other similarly situated constituents of the state, the liens do not discriminate against the FDIC–Receiver. *See United States v. County of Fresno*, 429 U.S. 452, 462, 97 S.Ct. 699, 704–05, 50 L.Ed.2d 683 (1977). If the FDIC–Receiver is forced to sell real property for its market value with liens attached, it will receive the same amount as would any other owner of the same property. The liens do not single out the FDIC–Receiver for special adverse treatment.

Because neither § 1825(b)(3) nor principles of intergovernmental tax immunity support the arguments of the FDIC–Receiver, the court holds the liens for tax penalties for 1983–86, which were all fixed prior to FDIC receivership, remain upon the Property.

\*     \*     \*

The motions to dismiss are denied. Farmers Branch's motion for summary judgment is granted and the FDIC–Receiver's counterclaim will be dismissed as to Farmers Branch in a judgment to be hereafter filed.[8]

SO ORDERED.

---

**8.** CFBISD did not move for summary judgment. Because its motion to dismiss is limited to the question of mootness, the court cannot now enter summary judgment dismissing the counterclaim as to CFBISD. The court may grant summary judgment *sua sponte* but only after giving the FDIC–Receiver at least ten days notice. *See NL Indus., Inc. v. GHR Energy Corp.*, 940 F.2d 957, 965 (5th Cir.1991). The court therefore advises the FDIC–Receiver that it in-

tends to grant CFBISD summary judgment on the basis of today's opinion. The FDIC–Receiver may file a response on or before the twentieth day following the date this opinion is filed. *See* N.D.Tex.R. 5.1(e). To eliminate unnecessary expense, it may simply advise the court by letter that it stands on its earlier arguments, in which case the court will enter final judgment and the FDIC–Receiver may pursue an appeal.