[No. C006639. Third Dist. July 11, 1990.]

CRESS R. FERREIRA, Plaintiff and Appellant, v.
COUNTY OF EL DORADO, Defendant and Respondent.

COUNSEL

Hoseit & Koelewyn and H. L. Koelewyn for Plaintiff and Appellant.

David W. Whittington, County Counsel, and Scott H. Finley, Deputy County Counsel, for Defendant and Respondent.

OPINION

**BLEASE, Acting P. J.**—Cress R. Ferreira obtained title to a parcel of tax-defaulted real property after a nonjudicial foreclosure sale under a deed of trust.[1] He was informed by the respondent El Dorado County that the amount necessary to redeem the property from tax default included redemption penalties under section 4103. He paid the amount demanded and brought this suit to recover the portion attributable to these redemption penalties. He appeals from a judgment denying this recovery. He contends that the trial court erred because, in his view, the foreclosure sale discharged the "junior lien" attributable to the redemption penalties. As appears, redemption penalties are not a lien, they are charges for the exercise of the privilege of redeeming tax-defaulted property. When Ferreira exer-

---

[1] " 'Tax-defaulted property' is real property which is subject to a lien for taxes which, by operation of law and by declaration of the tax collector, are in default and from which the lien of the taxes for which it was declared tax-defaulted has not been removed." (Rev. & Tax. Code, § 126; except as otherwise indicated references to a section are to this code.)

cised that privilege he was subject to those charges. We will affirm the judgment.

### FACTS AND PROCEDURAL BACKGROUND

The matter was tried to the court under a stipulated statement of facts. In pertinent part the parties stipulated as follows. In 1978, Coloma Beach Resort, Inc. (Coloma) sold the subject real property to James Gardner. Gardner executed a promissory note and the obligation was secured by a deed of trust. Thereafter Coloma assigned its interest to Ferreira and others (the beneficiaries).

Gardner failed to pay real property taxes in tax years 1979 through 1984 and the property was declared in tax default. In 1985 Gardner made an initial payment in a plan to pay the delinquent taxes in installments as provided in sections 4216-4226. He failed to make subsequent installment payments and did not pay property taxes in 1985 or 1986.

At some point Gardner failed to make payments on the promissory note. The beneficiaries caused a notice of default to be recorded in March 1986. In July 1986 Gardner filed a bankruptcy petition. Sometime thereafter the beneficiaries obtained permission from the bankruptcy court to continue the foreclosure. In June 1987 the beneficiaries purchased the property at the trustee's sale and became the owners of record. Thereafter they conveyed their interest in the property to Ferreira and his spouse.

Ferreira was informed by the county that the property would be sold at a tax sale unless he paid the amount of taxes and other charges owed, including the redemption penalties of approximately $14,000. After paying the entire amount, Ferreira filed a timely claim for a refund with the county, which was denied. Thereafter he filed a timely suit for a refund. The trial court denied a refund of the redemption penalties and Ferreira appeals.

### DISCUSSION

■ Ferreira contends that the trial court erred in denying the refund of the redemption penalties. He argues that foreclosure of the deed of trust "extinguished the lien for redemption penalties."[2] El Dorado County replies

---

[2] Ferreira also submits that the exaction is unfair because he had no right to redeem the property from tax default until he acquired title by foreclosure. He implies that he could not prevent the redemption penalty bill from running up. As El Dorado County points out, he is misinformed. (*Potter* v. *County of Los Angeles* (1967) 251 Cal.App.2d 280, 287 [59 Cal.Rptr. 335].) We note that it is customary to include payment of taxes as an obligation secured by the deed of trust and to afford the beneficiary the right to advance such payments under the

that under section 4102 the redemption penalties must be paid in order to redeem the property from tax default and that Ferreira's argument about lien priority is "irrelevant."[3] The county has the better argument.

In brief, the statutory scheme for the satisfaction of real property tax obligations is as follows. On or before June 8th the tax collector publishes a notice of impending default for failure to pay the taxes. (§ 3351.) The notice, inter alia, states that unless the amount due is paid default will occur by operation of law and unless the tax-defaulted real property is redeemed, it will subsequently be sold in satisfaction of the tax lien. (§ 3352.) At the time fixed in the notice the amount due and unpaid is declared in default by operation of law. (§ 3436.)

If the property is tax-defaulted for five years a power to sell it arises on the part of the tax collector. (§ 3691.) The right of redemption terminates the day before the day set for sale. (§ 3707.) Upon sale the tax collector executes a deed to the purchaser which conveys title free of all preexisting encumbrances, with specified exceptions. (§§ 3708, 3712.) The proceeds of the sale are distributed in the following order. First, "the amount required, at the time of sale, to redeem the property from tax default and the sale to any taxing agency entitled to share in the proceeds . . . ." (§ 4673.1.) This amount includes the redemption penalty amount. (§ 4102, fn. 3, *ante*.) Second, to satisfy current taxes and assessments. (*Ibid.*) If there is any excess, it may be claimed by parties of interest in the property. (§ 4674.)

The amount due cannot be paid after the time of declaration of default. (§ 3437.) In order to remove the tax lien after this point the property must be redeemed. "Tax-defaulted property may be redeemed until the right of redemption is terminated." (§ 4101.) As related, the amount necessary to redeem the property includes the redemption penalties. (§ 4102, subd. (c); fn. 3, *ante*.)[4] Redemption can be accomplished by paying this amount in one lump sum. Redemption may also be accomplished by means of annual installment payments of 20 percent or more of the amount necessary to redeem at the time of such an election. (§§ 4216, 4217, 4219.) Under such an installment payment redemption plan current taxes must also be paid. (§ 4220.) While the payment schedule is complied with the subject property does not become subject to a power of sale and the right of redemption does

security of the instrument. (See 1 Miller & Starr, Current Law of Cal. Real Estate (1975) § 3:102.)

[3] Section 4102, in pertinent part, is as follows. "The amount necessary to redeem shall be paid in lawful money of the United States and is the sum of the following: [¶] (a) The amount of defaulted taxes. [¶] (b) Delinquent penalties and costs. [¶] (c) Redemption penalties. [¶] (d) A redemption fee . . . ."

[4] Redemption penalties are 1½ percent a month of the original defaulted amount and like defaults in subsequent years. (§ 4103.)

not terminate. (§ 4218.) If all payments are not timely made the property becomes subject to a power of sale as if no installment payment election had been made. (§ 4222.)

Ferreira argues that the redemption penalties are a lien on the real property, but that this lien is not accorded a priority over other liens. He notes that real property tax liens are accorded a statutory priority. (§ 2192.1.) However, the priority only applies to a "tax on real property." (§§ 2187, 2192.1.) Ferreira relies upon *Weston Inv. Co.* v. *State of California* (1948) 31 Cal.2d 390 [189 P.2d 262] for the assertion that redemption penalties are not such a tax.

In *Weston*, the United States, exercising its power of eminent domain, took certain property on which that year's property taxes had become a lien but as to which the time analogous to that for declaration of default under our present statutory scheme had not elapsed. After that time had elapsed the party analogous to the tax collector under our present scheme collected the defaulted taxes and the amount of a redemption penalty from the fund established by the United States to provide just compensation for the taking. The California Supreme Court held that there was no entitlement to a redemption penalty. The opinion discusses the somewhat similar statutory scheme which preceded the one presently in effect and along the way does conclude that the former statutes "do not make the redemption penalties a part of the tax obligation to be secured by the lien." (31 Cal.2d at p. 393.) However, the point is not critical to the *Weston* holding.

The crux of the *Weston* opinion is succinctly stated in the last paragraph. "The statutory scheme when considered as a whole, clearly indicates that redemption penalties are merely what the name implies—charges for the exercise of the privilege of redeeming [tax-defaulted ] property. The property in question having been acquired by the United States prior to the [declaration of default], no right to redeem ever came into existence, and plaintiff was under no liability to pay penalties imposed solely as a condition to the exercise of a privilege which he never had." (31 Cal.2d at p. 394.) As El Dorado County notes, the situation in this case is exactly the opposite. Here, there was both an opportunity for redemption and an exercise of the privilege of redeeming tax-defaulted property.

We will assume for the sake of argument that the remark in *Weston* upon which Ferreira relies is still valid despite the alteration of the statutory scheme. However, granting that redemption penalties are not real property taxes entitled to lien priority does not compel acceptance of Ferreira's argument. The foundation of that argument is the premise that redemption penalties, while not a tax lien subject to statutory priority over the deed of

trust, are a lien on the real property which is subject to extinction under common law if granted no priority. This premise is contradicted by *Weston.* "[Redemption penalties] are not a part of the taxes and do not become a lien on the real property . . . ." (*Weston Inv. Co.* v. *State of California, supra,* 31 Cal.2d at p. 394.)

More importantly, Ferreira's claim does not comport with the language of the governing statutes. Under those statutes once property is declared in default it becomes subject to a power of sale unless it is redeemed. The only means provided under the statutes to accomplish redemption is to pay, among other things, the redemption penalties. (§§ 4102, 4216, 4221.) Ferreira, in effect asks us to read into section 4102 language excepting a redemptioner who has acquired title under foreclosure of a deed of trust from the statutory obligation to pay redemption penalties. We are not permitted to do this. (See Code Civ. Proc., § 1858.)

The judgment is affirmed.

Carr, J., and Davis, J., concurred.