262 F.3d 1014 (9th Cir. 2001)
 In re: COUNTY OF ORANGE, Debtor.
FEDERAL DEPOSIT INSURANCE CORPORATION, Appellant-Cross-Appellee,
v.
COUNTY OF ORANGE, Appellee-Cross-Appellant.
 Nos. 99-55853, 99-55967
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted October 10, 2000
Filed August 28, 2001
 
 [Copyrighted Material Omitted][Copyrighted Material Omitted]
 Lawrence H. Richmond, Counsel, Federal Deposit Insurance Corporation, Washington, D.C., for the appellant-cross-appellee.
 Jim Persinger, Deputy County Counsel, Santa Ana, California, for the appellee-cross-appellant.
 Appeal from the United States Bankruptcy Appellate Panel of the Ninth Circuit , Jones, Klein, and Perris, Presiding, BAP Nos. 98-1521-JPK, 98-1533-JPK
 Before: Robert Boochever, A. Wallace Tashima, and Richard C. Tallman, Circuit Judges.
 OPINION
 BOOCHEVER, Circuit Judge:
 
 
 1
 We decide whether the Federal Deposit Insurance Corporation ("FDIC"), when it acts as receiver, can avoid liens on real property securing delinquent tax penalties, when the liens were imposed before the FDIC was appointed receiver. We also determine whether the FDIC must pay California redemption charges and "Mello-Roos" taxes.
 
 FACTS
 
 2
 In December 1994, Orange County, California filed for Chapter 9 bankruptcy. One year later, on December 31, 1995, the FDIC succeeded the Resolution Trust Corporation as the receiver for numerous failed banks and financial institutions in Orange County. The FDIC also became the receiver for real property that had been foreclosed by those institutions. Under protest, the FDIC paid Orange County $805,249.49 in delinquent and redemption penalties for nonpayment of property tax, some of which arose before the FDIC's appointment as receiver. Orange County also collected $158,155.51 of special taxes under California's Mello-Roos Act, Cal. Gov't Code §§ 53311-53365.7.
 
 
 3
 The FDIC subsequently filed 41 proofs of claim in bankruptcy court, claiming that under 12 U.S.C. § 1825(b) Orange County's collection of the real property tax penalties was unlawful, and the payments must be refunded. The bankruptcy court disallowed the claims for pre-receivership real property tax delinquent penalties, concluding that the FDIC could not avoid pre-receivership liens for these penalties. The bankruptcy court also concluded, however, that the FDIC was not liable for redemption penalties which were not secured by liens, both before and after the receivership, or for post-receivership "Mello-Roos" taxes.
 
 
 4
 The Bankruptcy Appellate Panel affirmed. The FDIC appealed, and Orange County cross-appealed. We review BAP decisions de novo. See Cool Fuel, Inc. v. Bd. of Equalization (In re Cool Fuel, Inc.), 210 F.3d 999, 1001 (9th Cir. 2000).
 
 DISCUSSION
 
 5
 I. Pre-receivership liens for real property tax "delinquent penalties"
 
 
 6
 California's property tax statute requires that property taxes be paid by November 1, and if they have not been paid by December 10, "thereafter a delinquent penalty of ten percent attaches to them." Cal. Rev. & Tax Code§ 2617. The property tax delinquent penalties are subject to statutory liens. Id. § 2187. The FDIC argues that as receiver it is not liable for pre-receivership liens on the real property securing property tax delinquent penalties.
 
 
 7
 The resolution of this issue hinges on our interpretation of 12 U.S.C. § 1825(b). "In construing a statute, we first consider its text. When the statute's language is plain, the sole function of the courts--at least where the disposition required by the text is not absurd--is to enforce it according to its terms." United States v. One 1997 Toyota Land Cruiser, 248 F.3d 899, 903 (9th Cir. 2001) (quotations and alteration omitted). Section 1825(b) provides:
 
 
 8
 (b) Other exemptions
 
 
 9
 When acting as a receiver, the following provisions shall apply with respect to the Corporation [the FDIC]:
 
 
 10
 (1) The Corporation, including its franchise, its capital, reserves, and surplus, and its income, shall be exempt from all taxation imposed by any State, county, municipality, or local taxing authority, except that any real property of the Corporation shall be subject to State territorial, county, municipal, or local taxation to the same extent according to its value as other real property is taxed, except that, notwithstanding the failure of any person to challenge an assessment under State law of such property's value, such value, and the tax thereon, shall be determined as of the period for which such tax is imposed.
 
 
 11
 (2) No property of the Corporation shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of the Corporation, nor shall any involuntary lien attach to the property of the Corporation.
 
 
 12
 (3) The Corporation shall not be liable for any amounts in the nature of penalties or fines, including those arising from the failure of any person to pay any real property, personal property, probate, or recording tax or any recording or filing fees when due.
 
 
 13
 (Emphases added.)
 
 
 14
 The FDIC points out that the statute provides in (b)(2) that it is exempt from involuntary liens on "the property of the Corporation," and in (b)(3) that it is exempt from penalties for the failure of others to pay property taxes. Therefore, the FDIC argues, it is exempt from paying liens based on delinquent property taxes, even if those liens arose before it was appointed as receiver for the burdened properties.
 
 
 15
 The Fifth Circuit has rejected this analysis. In Irving Indep. Sch. Dist. v. Packard Props., 970 F.2d 58 (5th Cir. 1992), the FDIC acquired property with preexisting liens securing unpaid real property taxes and penalties. When the FDIC refused to pay the pre-receivership liens, the lienholders--the local school district and county--brought suit against the FDIC and won in district court. Irving dealt with the same issue we face in this case: Does 12 U.S.C. § 1825(b) require the extinction of pre-receivership liens securing penalties for the nonpayment of property taxes on real property that the FDIC later acquires as receiver? Id. at 60.
 
 
 16
 The Fifth Circuit concluded that the pre-receivership liens survived, relying on the plain language of the statute. Because § 1825(b)(2) states "When [the FDIC is] acting as receiver, the following provisions shall apply" (emphasis added), the statute's provision "nor shall any involuntary lien attach to the property of the corporation" is prospective:"Congress used the future tense to exclude only those liens that would otherwise attach after the FDIC acquired a property . . . . [L]iens may not attach to that property while the FDIC owns it, but a property previously encumbered must remain so. " 970 F.2d at 61.
 
 
 17
 The Irving court then turned to subsection (b)(3), which states that the FDIC "shall not be liable for any amounts in the nature of penalties or fines, including those arising from the failure of any person to pay any real property . . . tax." The FDIC argued (as it does here) that allowing the liens based on the penalties violates subsection (b)(3) by imposing on the FDIC an "amount in the nature of penalties." The Fifth Circuit concluded that allowing the liens to survive did not effect the imposition of a penalty on the FDIC, because the FDIC would have been perfectly aware of those preexisting liens already attached to the property when it took it over. "Congress chose to leave property acquired by the FDIC in the same condition as the FDIC found it . . . . The FDIC is protected from the disadvantages attendant upon its role, but the nature of the assets the FDIC receives from the institution remains unchanged." Irving, 970 F.2d at 62 (quotations and alteration omitted); see First State Bank-Keene v. Metroplex Petroleum Inc., 155 F.3d 732, 738 (5th Cir. 1998) ("the key to our holding [in Irving] was that allowing future enforcement of the liens did not constitute a deprivation of the FDIC's property").
 
 
 18
 The Seventh Circuit followed Irving, adopting its result and its reasoning based on the plain language of the statute. See RTC Commercial Assets Trust 1995-NP3-1 v. Phoenix Bond & Indem. Co., 169 F.3d 448, 458 (7th Cir. 1999).
 
 
 19
 The FDIC urges us to adopt a different interpretation of the statute's language, arguing that "when acting as a receiver" is not a temporal limitation meaning "during the period when the FDIC is the receiver," but instead simply establishes the context within which § 1825(b) applies. But Congress chose the temporal word "when," and we must interpret the language as it is written, "giv[ing] effect, if possible, to every clause and word of a statute." Williams v. Taylor, 529 U.S. 362, 404 (2000) (quotations omitted).[1]
 
 
 20
 We also note that subsection (b)(2) provides "nor shall any involuntary lien attach to the property of the Corporation" (emphasis added). That language's plain meaning is that once the property belongs to the FDIC, that is, when the FDIC acts as receiver, no liens shall attach. The statute does not, however, provide for extinguishing liens that attached when the property was not the FDIC's. Under the plain terms of the statute's subsections, the FDIC is not exempt from liens that attached before the subject real property became"the property of the Corporation." See Carrollton-Farmers Branch Indep.Sch. Dist. v. FDIC, 776 F. Supp. 1180, 1186 (N.D. Tex. 1991) (aff'd in Irving).
 
 
 21
 The FDIC argues that we should interpret 12 U.S.C. § 1825(b)(2) and (b)(3) the same way that the Supreme Court interpreted a pair of former bankruptcy statutes some forty years ago. In Simonson v. Grandquist, 369 U.S. 38 (1962), the question was whether the federal government could recover federal tax penalties that were perfected liens against the estate of a bankrupt. Section 57j of the Bankruptcy Act then read, "Debts owing to the United States . . . as a penalty or forfeiture shall not be allowed . . . ." Section 67b, however, stated that "statutory liens . . . for taxes and debts owing to the United States . . . may be valid against the trustee . . . ." The government argued that § 57j should be read to apply only to unsecured penalty claims, referring to the general purpose and structure of the Bankruptcy Act. The Court disagreed, stating that the language itself was a more dependable guide to the statute's meaning: "Unquestionably that language is broad enough to bar all penalties, whether secured by lien or not, and we think the section was designed to do precisely that." 369 U.S. at 40; see Stodd v. Cal. Employment Dev. Dep't (In re Petite Auberge Vill., Inc.), 650 F.2d 192, 195 (9th Cir. 1981) (California may not recover tax penalties and post-petition interest from bankruptcy estate by characterizing them as "delinquent taxes").
 
 
 22
 As we have done in this case, the Court in Simonson interpreted the plain language of a statute and rejected the government's more general policy argument. Our review of the language of 12 U.S.C. § 1825(b)(2) and (b)(3) is not controlled by the Supreme Court's interpretation of a different statute with different language in a different area of the law. We nevertheless note that in 1989 Congress explicitly wrote into bankruptcy law the equitable policies cited by the Simonson court. See 11 U.S.C. §§ 724(a), 726(a)(4) ("trustee may avoid a lien that secures a claim . . . for any . . . penalty"); Irving, 970 F.2d at 63. In this case, however, the statute's plain language leads to a different result, and evidences Congress's intent to strike a different policy balance in the receivership context.
 
 
 23
 The FDIC enjoys sovereign immunity from state tax penalties to facilitate its reconsolidation of failed banks; in addition to the Constitutional requirements, an admirable goal underlies that immunity. Whenever the FDIC can reduce the charges connected to property it has acquired, it can increase the value of the property, decrease its own losses, expedite resale, and save the nation's taxpayers and insured depositors a great deal of money. The ability to extinguish liens securing unpaid tax penalties incurred by earlier owners would certainly further those goals. But to endow the FDIC with such a valuable tool would come at a great cost to state and local taxing authorities. Using this case as an example, local governments and school districts have operated with reliance on the recovery of unpaid ad valorem taxes and penalties through liens on real property. To deny them their justified expectations of receiving those funds would threaten their ability to operate their schools. The policy arguments in this case are strong on both sides. Perhaps in consideration of these countervailing interests, Congress limited its grant of power to the FDIC.
 
 
 24
 Id. at 62-63; see also World Scope Publishers, Inc. v. United States, 348 F.2d 640, 642 (2d Cir. 1965) (rejecting policy argument based on Simonson because "it does not accord sufficient weight to the legitimate interests to be served by collecting tax penalties"). We further note that Orange County is the bankrupt entity in this case, and under these circumstances allowing the County to collect on preexisting liens for tax penalties does not diminish but enlarges the bankruptcy estate, furthering Simonson's purpose "to provide for the conservation of the estates of insolvents to the end that there may be a[n] equitable distribution of assets." 369 U.S. at 40.
 
 
 25
 We conclude that the plain language of § 1825(b), "[w]hen acting as receiver," establishes the time frame during which "involuntary lien[S shall not] attach to the property of the Corporation." Id. at (b)(2). The liens securing tax penalties in place at the time that the FDIC became the receiver remain in force.
 
 
 26
 II. Preand post-receivership redemption penalties
 
 
 27
 Orange County cross-appeals from the BAP's holding that the FDIC was not liable for unsecured "redemption penalties," either before or after receivership.
 
 
 28
 In California, defaulted taxes on real property are subject to "redemption penalties," defined in California Revenue and Tax Code § 4103(a) as the sum of "1 percent a month to the time of redemption." The BAP concluded that because the statute labeled redemption payments as "penalties," the FDIC was thus exempt from redemption payments after it became the receiver under § 1825(b)(3) ("the Corporation shall not be liable for any amounts in the nature of penalties or fines, including those arising from the failure of any person to pay any real property . . . tax. . . ."). Orange County attempts to avoid (b)(3) by characterizing the redemption payments as "statutory interest" (18% a year), and argues that they are payable by the FDIC as part of the preexisting tax lien on the property.
 
 
 29
 It is clear from the face of the California statute that the redemption penalties are just that, penalties, and not interest. See Irving Indep. Sch. Dist. v. Packard Props., Ltd. , 741 F. Supp. 120, 124 (N.D. Tex. 1990) (provisions of Texas tax code are on their face penalty provisions, so FDIC is not liable for payment) (aff'd in Irving). The California statute also explicitly provides that the redemption penalties"constitut[e] the assessment of interest" only "for purposes of an administrative hearing or any claim in a bankruptcy proceeding pertaining to the property being redeemed," § 4103(b), neither of which applies to this case. As the FDIC points out, 18% a year is far above any standard assessment of "interest," giving a redemption charge the traditional punitive aspect of a penalty. In addition, the California Supreme Court has declared that the relevant state statutes "do not make the redemption penalties a part of the tax obligation to be secured by the lien." Weston Inv. Co. v. California, 189 P.2d 262, 264 (Cal. 1948); see Ferreira v. El Dorado County, 272 Cal. Rptr. 49, 50 (Ct. App. 1990) ("redemption penalties are not a lien").
 
 
 30
 We agree with the BAP that the redemption penalties are indeed penalties, not interest, and because they are not secured by preexisting liens, under § 1825(b)(3) the FDIC is not liable for those amounts. This is true whether the redemption penalties were assessed before or after the FDIC became the receiver.While § 1825(b)(2) exempts "property of the Corporation" from liens and thus does not exempt the FDIC from liens that attached before the FDIC owned the property as receiver, § 1825(b)(3) simply provides that"[t]he Corporation shall not be liable for any amounts in the nature of penalties . . . arising from the failure of any person to pay any real property . . . tax." There is no question that this exempts the FDIC from penalties assessed after it becomes the receiver. The FDIC also is not liable for pre-receivership penalties, unless they are secured by a lien. Section 1825 (b)(3) "prevents local taxing authorities from forcing the FDIC to pay penalties for the failure of previous owners to pay property taxes." Irving, 970 F.2d at 62. Nevertheless, the agency is subject to liens lawfully affixed to real property, even if they secure penalties. See Carrolton-Farmers Branch Indep. Sch. Dist., 776 F. Supp at 1186 (statute personally exempts FDIC from pre-receivership liability for penalties, but does not exempt FDIC from valid pre-receivership liens).
 
 
 31
 III. Mello-Roos districts as indispensable parties
 
 
 32
 Following the passage of Proposition 13 in 1978, the California legislature passed the Mello-Roos Community Services Act of 1982. Cal. Gov't Code §§ 53311-53368.3. The Mello-Roos Act provides a method to fund certain public facilities and services through "community facilities districts." The parties stipulated in the bankruptcy court that Mello-Roos is a "special" tax that is not an ad valorem tax. The statue itself specifies that Mello-Roos is a "special tax." Id. § 53325.3. Further, "properties or entities" of the federal government are exempt from the tax. Id. § 53340(c); see City of Camarillo v. County of Ventura, 31 Cal. Rptr. 2d 920 (Ct. App. 1994) (Mello-Roos tax is special tax not construed to be based on ownership of real property).
 
 
 33
 Although the Mello-Roos tax is not an "ad valorem " tax (a tax imposed on property according to its value), it is billed to the properties within the community facilities districts on the regular ad valorem property tax bills sent to the property owners. The County collects the Mello-Roos taxes in the same way as the ad valorem taxes, and then remits them to the individual community facilities districts. See Cal. Gov't Code § 53340.
 
 
 34
 Because the FDIC, as a federal agency, is exempt from the Mello-Roos tax, the agency filed claims against Orange County for the return of $158,155.51 in special taxes. The bankruptcy court overruled the County's objections to the claims and rejected the County's argument that the Mello-Roos districts were indispensable parties. The BAP agreed. We review the bankruptcy court's refusal to dismiss an action for a failure to join a party for an abuse of discretion, although legal conclusions underlying that decision are reviewed de novo. See United States v. Bowen, 172 F.3d 682, 688 (9th Cir. 1999).
 
 
 35
 Under Federal Rule of Civil Procedure 19(a), "a party is `necessary' in two circumstances: (1) when complete relief is not possible without the absent party's presence, or (2) when the absent party claims a legally protected interest in the action." Bowen, 172 F.3d at 688. Only if the court finds that an absent party is "necessary" does it proceed to determine whether joinder is feasible, or if not, whether the party is "in-dispensable." Id.
 
 
 36
 In this case, complete relief is available without the presence of the Mello-Roos districts. Mello-Roos taxes are collected by the county with the ad valorem property taxes. The state tax code provides that the taxpayer should file an action against the county to get a refund for taxes collected by the county on behalf of another entity. See Cal. Rev. & Tax. Code § 5146 (county must notify other tax entities, who may intervene; county can recover separately from other tax entities after judgment). The FDIC can get complete relief--i.e., the tax refund--from Orange County, which can eventually recover the amount of Mello-Roos taxes refunded from the districts.
 
 
 37
 Second, Orange County cannot claim that the districts have a legally protected interest in the action unless the districts themselves claim that they have such an interest, and the districts have been silent. See Bowen, 172 F.3d at 689 ("it is inappropriate for one defendant to attempt to champion the absent party's interests") (quotations and alterations omitted). Further, as the FDIC points out, the names of the districts and the details of their individual taxes are not revealed by the tax bills sent by the County. It would therefore be impracticable to require the FDIC to join the Mello-Roos districts. The failure to require that the FDIC join the Mello-Roos districts as indispensable parties was not an abuse of discretion.
 
 
 38
 AFFIRMED.
 
 
 
 Notes:
 
 
 [1]
 The FDIC also asks us to defer to the agency's interpretation of the statute under Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984). But we defer to an agency's interpretation only after determining that a statute is ambiguous. Id. at 842-43. Because the statute's language is clear, we need not resort to statements of agency policy. See RTC Commercial Assets Trust, 169 F.3d at 458 (no consideration of agency policy when statute is clear); Matagorda County v. Russell Law, 19 F.3d 215, 220 (5th Cir. 1994) (no need to defer to FDIC's interpretation of 12 U.S.C. § 1825(b)(2) because "[t]he clear language of the statute has become no less clear since Irving").
 
 
 
 39
 TASHIMA, Circuit Judge, concurring in part and dissenting in part:
 
 
 40
 I concur in all of the majority opinion, except Part I, as to which I respectfully dissent.
 
 
 41
 In Part I, the majority interprets 12 U.S.C. § 1825(b)(2) to hold the FDIC liable to the County for penalties arising from the failure to pay property taxes when due--as long as those penalties are secured by a lien.
 
 
 42
 Section 1825(b)(2) provides that no "involuntary liens [shall] attach to the property of the Corporation." The majority circumvents this limitation by relying on § 1825(b)'s opening words, which state that the limitations contained in § 1825(b)(2) apply only "[w]hen [the FDIC is] acting as a receiver." The majority concludes that by the use of the term "when," Congress demonstrated its intent to limit the FDIC's exemption from prospective liens only to those which were not already in place when it acquired the property, i.e., it reads "when" as imposing a temporal limitation on the FDIC's exemption. I disagree.
 
 
 43
 The opening words of the statute -"When acting as a receiver" -do not impose a temporal limitation on the FDIC's tax liability. In the sense used in the statute, "when" does not indicate time; rather it indicates that the FDIC's exemption is functionally, as opposed to temporally, limited -to those instances, occasions, and transactions in which it is acting as a receiver, as opposed to those instances, occasions, and transactions in which it is acting in some other capacity, such as in its corporate capacity. This is in accord with common dictionary definition of "when," which include "in what circumstances," as well as "at what time." Webster's THIRD NEW INT'L DICTIONARY at 2606 (G. &C. Merriam Co. 1981).
 
 
 44
 This reading is buttressed by Congress' inclusion of § 1825(b)(3). Section 1825(b)(3) states that the FDIC "shall not be liable for any amounts in the nature of penalties or fines, including those arising from the failure to pay any real property . . . tax . . . when due." 12 U.S.C.§ 1825(b)(3). Thus, because the FDIC cannot be liable for any penalties, regardless of when these penalties accrued, it is axiomatic that the FDIC cannot be made to pay these penalties even if secured by liens.[1] The majority's reading, however,renders § 1825(b)(3) effectively meaningless by allowing counties and other taxing authorities to do indirectly what they cannot do directly.
 
 
 45
 It is common knowledge in the financial community that the FDIC customarily acts in one of two capacities, either as a receiver of a failed bank or in its corporate capacity. Congress was well aware of this and the only sensible reading of § 1825(b) is that Congress intended to preserve and implement this distinction. A reading of the statute as a whole, including all of its subparts, confirms that such is the correct interpretation.
 
 
 46
 I would thus reverse the bankruptcy court's disallowance of the FDIC's claims under § 1825(b).
 
 
 
 Notes:
 
 
 [1]
 A lien is merely a device to secure payment of an underlying debt. If the debt is uncollectible, as it is here, then the lien must be extinguished. See Aguirre v. S.S. Sohio Intrepid, 801 F.2d 1185, 1190 (9th Cir. 1986). Here, § 1825(b)(3) flatly prohibits any claim for collection of the penalties. See 12 U.S.C. § 1825(b)(3).