**In re John Stephen FOWLER, Debtor.**

No. 11–43193–B–13J.
DCN HLC–1.

United States Bankruptcy Court,
E.D. California,
Sacramento Division.

Sept. 28, 2012.

David J. Fillerup, Chico, CA, for Debtor.

## MEMORANDUM DECISION ON OBJECTIONS TO CONFIRMATION OF CHAPTER 13 PLAN

THOMAS C. HOLMAN, Bankruptcy Judge.

The court is asked to determine whether Cal. Rev. & Tax Code ("RTC") § 4103(b) is unconstitutional as pre-empted by the Supremacy Clause of the United States Constitution. Debtor contends that RTC § 4103(b) is not "applicable nonbankruptcy law" within the meaning of 11 U.S.C. § 511(a), that RTC § 4103(b) is therefore pre-empted by the Bankruptcy Code and that the interest rate to be paid on a secured real property tax claim in a chapter 13 plan is determined under *Till et ux. v. SCS Credit Corp.*, 541 U.S. 465, 124 S.Ct. 1951, 1955–56, 158 L.Ed.2d 787 (2004). For the reasons set forth herein, the court holds that RTC § 4103(b) is "applicable nonbankruptcy law" within the meaning of 11 U.S.C. § 511(a), that RTC § 4103(b) is therefore not pre-empted by the Bankruptcy Code and that RTC § 4103(b) does control the interest rate to be paid on a secured real property tax claim in a chapter 13 plan.

## FACTUAL BACKGROUND

The debtor, John Fowler, commenced the above-captioned chapter 13 bankruptcy case by the filing a voluntary chapter 13 petition on September 27, 2011. Concurrently with the filing of the petition, the debtor filed his initial chapter 13 plan ("the Plan") on September 27, 2011. The Plan was noticed to all creditors listed on the debtor's master address list consistent with the provisions of then-applicable General Order 05–03.[1]

The Plan proposes to payments of $779.30 per month over sixty months. The Plan proposes treatment for two secured creditors: 1.) Rabobank, N.A., ("Rabobank") holder of the first deed of trust on the debtor's residence located at 3101 Orange Avenue, Oroville, California (the "Residence") and 2.) the County of Butte (the "County") holder of a lien in the Residence for unpaid real property taxes in the estimated amount of $968.00. The debtor proposed to pay the County's claim at a rate of $18.00 per month at a rate of interest of 4.00% per annum. The Plan proposed to pay no dividend to general unsecured creditors.

---

1. General Order 05–03 has since been superseded by Local Bankruptcy Rule 3015–1, effective May 1, 2012.

The debtor also filed concurrently with his voluntary petition his Schedule I Current Income of Individual Debtor ("Schedule I") and Schedule J Current Expenditures of Individual Debtor ("Schedule J"). Schedule I showed that the debtor had monthly net income of $1,151.00, which consisted of the debtor's social security benefits and a contribution from his brother for the purpose of paying the ongoing debt service and arrears owed to Rabobank. Schedule J showed that the debtor had $371.70 in average monthly expenses, leaving him with $779.30 in net monthly income, the same amount as the proposed Plan payment.

On November 17, 2011, Rabobank filed an objection to confirmation of the Plan. Rabobank objected that the Plan's proposal to pay interest at a rate of 4% on the County's tax claim rendered the Plan unconfirmable because 11 U.S.C. § 511(a) required the debtor to propose a rate of interest on the County's claim in accordance with the rate determined by state law, specifically RTC § 4103(b), which Rabobank argued required the debtor to propose an interest rate of 18% per annum. Rabobank also objected to confirmation of the Plan on the ground that it was not feasible, arguing that the budget set forth on the debtor's Schedule J did not adequately account for the actual cost of ongoing post-petition tax obligations, property insurance, automobile insurance, home maintenance, medical and dental expenses, transportation expenses.

Rabobank's objection was initially heard on December 6, 2011, and was opposed by the debtor, who asserted that RTC § 4103(b) was invalid as violative of the Supremacy Clause of the United States Constitution. The objection was continued to January 10, 2012, and finally to February 14, 2012 for supplemental briefing, in which the County participated by filing a brief on February 7, 2012.[2] The objection was also continued to allow the debtor to give notice to the Attorney General of the State of California pursuant to Fed. R. Bankr.P. 9005.1 that the debtor was objecting to the constitutionality of RTC § 4103(b) under the Supremacy Clause of the United States Constitution, Article VI, clause 2. The debtor, Rabobank and the County filed supplemental briefing. The State of California did not appear in response to the debtor's notice and has not made any appearance in this case. The court took Rabobank's objection under submission on February 14, 2012.

## ANALYSIS

█ The court must determine whether RTC § 4103(b) violates the Supremacy Clause of the U.S. Constitution. The debtor argues that § 4103(b) is unconstitutional because it converts California's 18% redemption penalty into an interest rate for bankruptcy purposes only, which makes it a "bankruptcy-specific" statute that treats non-bankrupt taxpayers and taxpayers in bankruptcy differently. The debtor argues that because it is a bankruptcy-specific statute, RTC § 4103(b) is

2. On October 23, 2011, prior to the deadline for filing objections to confirmation of the chapter 13 plan, the County filed a letter from Amy Barker, Deputy Tax Collector (Dkt. 19) (the "Letter"), objecting to the debtor's plan on the ground that it did not provide for payment of the County's claim at a rate of 18% per annum. The objection contained in the Letter was not set for hearing because the County had not filed a notice of hearing with the Letter. In connection with the supplemental briefing ordered by the court on January 10, 2012 (Dkt. 53), the County filed, through counsel, a supplemental brief raising the same objection as set forth in the Letter. The court treats the objection regarding the rate of interest to be paid on the County's claim as one raised by both Rabobank and the County.

not "applicable non-bankruptcy law" for the purposes of 11 U.S.C. § 511 and goes beyond the authority granted by § 511.

### Is Cal Rev. & Tax Code § 4103(b) Invalid as Violative of the Supremacy Clause?

The treatment of secured claims, like that of the County, in a chapter 13 plan is governed by the provisions of 11 U.S.C. § 1325(a)(5). Section 1325(a)(5) requires, inter alia, that either the holder of the claim accepts the treatment of the claim under the plan, or that the claim holder (1) retains its lien until payment of the claim or the debtor is discharged under § 1328 and (2) the value, as of the effective date of the plan, of property to be distributed under the plan on account of the claim is not less than the allowed amount of the claim.

With respect to secured claims based on tax obligations, 11 U.S.C. § 511(a) states:

(a) if any provision of this title requires the payment of interest on a tax claim or on an administrative expense tax, or the payment of interest to enable a creditor to receive the present value of the allowed amount of a tax claim, the rate of interest shall be the rate determined under applicable nonbankruptcy law.

11 U.S.C. § 511(a).

RTC § 4103 sets forth requirements for redemption penalties on unpaid tax obligations and interest rates on claims for unpaid state taxes in bankruptcy cases, and states in relevant part:

(a) Redemption penalties are the sum of the following:

(1) Beginning July 1st of the year of the declaration of tax default, on the declared amount of defaulted taxes at the rate of 1 1/2 percent a month to the time of redemption.

. . . .

(b) For purposes of an administrative hearing or any claim in a bankruptcy proceeding pertaining to the property being redeemed, the assessment of penalties determined pursuant to subdivision (a) with respect to the redemption of that property *constitutes the assessment of interest.*

Cal. Rev. & Tax Code § 4103 (emphasis added).

RTC § 4103(b) was enacted in 1996 in part to clarify the right of holders of secured claims based on unpaid real property taxes to the inclusion of post-petition interest in such claims to the extent they were oversecured. Without RTC § 4103(b), which stated that the redemption penalty in RTC § 4103(a) constituted interest for bankruptcy purposes, holders of such claims could claim as part of the secured claim, in addition to the tax owed, only "fees, costs and charges" to the extent that they were reasonable. *See United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989); John N. Tedford, *Characterization, Classification, Payment and Treatment of Real Property Tax Claims Arising Under California Law,* 32 Cal. Bankr. J. 1, 30–33 (2012)(describing history of California real property tax statutes).

Rabobank and the County argue that pursuant to the foregoing statutes, the County's secured claim based on unpaid real property taxes must be paid for in full by the Plan with a rate of interest of 18% per annum, as the one and one-half percent redemption penalty described in RTC § 4103(a) is to be treated as an interest rate on a claim in bankruptcy.

The debtor disagrees. The debtor argues that he is not required to pay the County's claim at a rate of 18% per annum pursuant to RTC § 4103(b) because that subsection is unconstitutional and preempted by the Bankruptcy Code under

the Supremacy Clause of the U.S. Constitution, and that he is instead free to propose a lower rate that is consistent with *Till et ux. v. SCS Credit Corp.*, 541 U.S. 465, 124 S.Ct. 1951, 1955–56, 158 L.Ed.2d 787 (2004). *Till* directs this court to conduct a present value calculation as of the effective date of the plan by starting with the risk free rate (i.e., the prime rate) and adjusting upward for appropriate risk factors to reach an appropriate interest rate. The debtor argues that RTC § 4103(b) does not apply to this case or to any other bankruptcy case in which a California state tax claim is involved because RTC § 4103(b) is a "bankruptcy specific" statute that is preempted by the Bankruptcy Code pursuant to the Supremacy Clause of the U.S. Constitution because § 4103(b) has a disparate impact on debtors and non-debtors.

The Supremacy Clause provides that the "Constitution and the Laws of the United States which shall be made in Pursuance thereof ... shall be the supreme Law of the Land ... any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. "The Supremacy Clause and the doctrine of preemption, which implements it, operate to invalidate state statutes to the extent they are inconsistent with, or contrary to, the purposes or objectives of federal law." *In re Applebaum*, 422 B.R. 684, 688 (9th Cir. BAP 2009) (citing *Perez v. Campbell*, 402 U.S. 637, 652, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971)).

■ The debtor's argument hinges on his interpretation of the phrase "applicable nonbankruptcy law" found in § 511(a), specifically his statement that "Congress uses the phrase 'applicable nonbankruptcy law' as a limitation to nonbankruptcy law that is not bankruptcy specific." Put another way, the debtor takes the position that "applicable nonbankruptcy law" is law that

is (1) not part of the Bankruptcy Code, (2) is not intended to apply specifically only to bankruptcy cases and (3) does not treat debtors and non-debtors differently, i.e., it does not have a disparate impact on debtors and non-debtors. Applying the debtor's theory to this case, the debtor argues that RTC § 4103(b) does not fit within the definition of "applicable nonbankruptcy law" because it provides for payment of an interest rate on delinquent property tax claims *only* for debtors in bankruptcy proceedings; non-debtors are required to pay a "redemption penalty" as set forth in RTC § 4103(a). The debtor argues that the payment of a redemption penalty by non-debtors and the payment of an interest rate by debtors results in disparate treatment of the two groups because a debtor in bankruptcy who pays an interest rate on a tax claim will be able to claim a federal tax deduction for the interest paid, while the non-debtor will not be able to claim a federal tax deduction based on payment of a redemption penalty.

Finally, if RTC § 4103(b) is invalid, because RTC § 4103(a) does not describe an interest rate but a "penalty," the debtor argues that there is no California statute which constitutes "applicable nonbankruptcy law" for the purposes of § 511(a). Therefore, the debtor argues, he is entitled to propose an interest rate that is consistent with *Till*.

The court disagrees with the debtor's interpretation of the phrase "applicable non-bankruptcy law." The debtor cites *In re Applebaum*, 422 B.R. 684, 690 (9th Cir. BAP 2009) to support his contention that "Congress uses the phrase 'applicable nonbankruptcy law' as a limitation to nonbankruptcy law that is not bankruptcy specific." *Applebaum* involved a chapter 7 trustee's challenge to the constitutionality of Cal.Civ.Proc.Code § 703.140, which provides for exemptions that are applicable

only to debtors in bankruptcy proceedings, and which exemptions are similar but not identical to the federal bankruptcy exemptions listed in 11 U.S.C. § 522(d). The chapter 7 trustee in *Applebaum* "did not challenge the state's authority to adopt its own exemptions, but challenge[d] the separate bankruptcy-only exemption statute." *Id.* at 690. The *Applebaum* court then went on to state:

> The Constitutional analysis, however, is the same. Section 522(b) "allows the States to define what property a debtor may exempt from the bankruptcy estate that will be distributed among his creditors." *Owen v. Owen*, 500 U.S. 305, 306, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991).
>
> . . . .
>
> Section 522(b)(3)(A) defines exempt property as "*any* property that is exempt under federal law, . . . or State or local law that is applicable" at the petition date in the place the debtor is domiciled. 11 U.S.C. § 522(b)(3)(A) (emphasis added). Congress did not limit the exempt property to a state's "applicable non-bankruptcy law" (as it did in § 522(b)(3)(B)) (regarding property held in tenancy by the entirety.) *See Russello v. United States*, 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983) (where Congress includes particular language in one section of a statute but omits it from another, it is presumed that Congress acted intentionally and purposely). Therefore, there is simply no requirement that the state or local law referenced in § 522(b)(3)(A) be the same as the law that applies to non-bankruptcy debtors. *Sheehan v. Peveich*, 574 F.3d at 252 (Congress did not restrict the states' authority to adopt exemptions with a requirement that exemptions apply equally to bankruptcy and non-bankruptcy cases). As a result, a separate bankruptcy-only exemption scheme is

not in and of itself preempted by the Supremacy Clause.

*Applebaum,* 422 B.R. at 690.

The debtor seizes on the last two sentences from *Applebaum* quoted as proof that the phrase "applicable non-bankruptcy law" is defined by the Ninth Circuit as law that applies equally to debtors in bankruptcy and debtors or individuals who are not in bankruptcy, wherever it appears in the Bankruptcy Code. *Applebaum* does not stand for such a far-reaching proposition, however. The language quoted above really stands for the narrower proposition that, given the difference in the language between two consecutive subsections of § 522(b)(3), there can be no implication that § 522(b)(3)(A) is intended to limit state exemption laws to those that are also applicable to non-bankruptcy debtors.

Nor does the authority cited by the *Applebaum* court, *Sheehan v. Peveich (In re Sheehan),* 574 F.3d 248 (4th Cir.2009), define the phrase "applicable non-bankruptcy law" in the manner urged by the debtors. In fact, *Sheehan,* a short decision that was also concerned with the constitutionality of a "bankruptcy-specific" exemption scheme, makes no reference whatsoever to any definition of the phrase. *Sheehan*'s Supremacy Clause analysis says:

> The Supremacy Clause and the doctrine of preemption invalidate state statutes to the extent they are inconsistent with or contrary to the purposes or objectives of federal law. *Wisconsin Pub. Intervenor v. Mortier,* 501 U.S. 597, 604, 111 S.Ct. 2476, 115 L.Ed.2d 532 (1991). There are three ways federal law may preempt state law. First, federal legislation may preempt state law by expressly declaring Congress' intent to do so. *Cox v. Shalala,* 112 F.3d 151, 154 (4th Cir.1997). Second, Congress can " 'occupy the field' by regulating so pervasively that there is no room left

for the states to supplement federal law." *Id.* Third, a state law is preempted "to the extent that it actually conflicts with federal law." *Id.* There can be no preemption, however, where Congress "expressly and concurrently authorizes" state legislation on the subject. *Rhodes v. Stewart,* 705 F.2d 159, 163 (6th Cir.1983). *"In such instance, rather than preempting the area, Congress expressly authorizes the states to 'preempt' the federal legislation." Id.* Section 522(b)(1) affords the states the authority to restrict their respective residents to exemptions promulgated by the state legislatures, if they so choose. This statutory provision is an express delegation to the states of the power to create state exemptions in lieu of the federal bankruptcy exemption scheme. *See Hovis v. Wright,* 751 F.2d 714, 716 (4th Cir.1985) (concluding that § 522(b)(1) grants the states broad power to craft state exemption laws applicable to bankruptcy proceedings). Congress has not seen fit to restrict the authority delegated to the states by requiring that state exemptions apply equally to bankruptcy and non-bankruptcy cases, and we are without authority to impose such a requirement. *Sheehan,* 574 F.3d at 252 (emphasis added). The court declines derive the debtors' definition of the phrase "applicable nonbankruptcy law" from the foregoing analysis.

The debtor also urges the court to follow the decision of the Bankruptcy Court in the Northern District of California in *In re Collier* which specifically addresses the issue before the court here and which held that

> Cal. Rev. & Tax Code § 4103(b) is preempted by the Bankruptcy Code and may not be applied to a bankruptcy debtor. Congress' intent in enacting 11 U.S.C. § 511(a) was clearly *to prevent any distinction* between bankruptcy and nonbankruptcy debtors with respect to the interest rate imposed on delinquent tax claims. The thrust of § 4103(b) is directly opposed to that intent: i.e., it creates a distinction between the two types of taxpayers.

*Collier,* 416 B.R. 713, 718 (Bankr.N.D.Cal. 2008) (emphasis added).[3]

This court disagrees with Collier's holding. *Collier* court's articulated the question to be answered by its preemption analysis as follows:

> The question is whether Congress's intent in enacting § 511(a) was to permit states to enact a bankruptcy specific interest rate or merely to subject bankruptcy debtors to the same interest rate imposed on nonbankruptcy debtors under state law.

*Id.* at 716.

*Collier* then goes on to cite *MSR Exploration, Ltd. v. Meridian Oil, Inc.,* 74 F.3d 910, 913 (9th Cir.1996) for a general description of the doctrine of preemption. *Collier* then discusses two cases in which the Ninth Circuit Court of Appeals held that California state statutes were preempted by the Bankruptcy Code: *Sherwood Partners, Inc. v. Lycos, Inc.,* 394 F.3d 1198, 1201 (9th Cir.2005) and *In re Kanter,* 505 F.2d 228, 230–31 (9th Cir. 1974), and notes a split of authority on the

---

**3.** The ruling in *Collier,* which overruled a county tax collector's objection to confirmation of the debtor's chapter plan, was later reversed in an unreported decision, *In re Collier,* 2009 WL 5449150 (Bankr.N.D.Cal., Jan. 5, 2009) on the ground that the issue of whether the § 4103(b) was preempted by the Bankruptcy Code was moot. Although the second, unpublished decision reversed the first decision, some publishers continue to show that Rev. & Tax Code § 4103 was preempted by the first *Collier* decision.

constitutionality of exemption schemes enacted by states which are applicable only to bankruptcy debtors.[4] *Id.* at 717. Based on the foregoing authorities "in particular, *Kanter*," the *Collier* court concluded that "Congress's intent in enacting 11 U.S.C. § 511(a) was clearly to prevent any distinction made between bankruptcy and non-bankruptcy debtors with respect to the interest rate imposed on delinquent tax claims." *Id.* at 718.

It is unclear how the *Collier* court came to that conclusion, however, considering the fact that none of the authorities cited by *Collier* had anything at all to do with claims for rates of interest on unpaid taxes or with the interpretation of the phrase "applicable nonbankruptcy law." This court disagrees with Collier's conclusion as to the "clear intent" of Congress. *Collier* cites no authority for the proposition that Congress' intent in enacting § 511(a) was to erase *any* distinction between debtors in bankruptcy and debtors not in bankruptcy. In fact, the legislative record relating to § 511(a) indicates an entirely different purpose for its enactment:

> Under current law, there is no uniform rate of interest applicable to tax claims. As a result, *varying standards have been used to determine the applicable rate.* Section 704 of the [Bankruptcy Abuse Prevention and Consumer Protection Act of 2005] amends the Bankruptcy Code to add section 511 *for the purpose of simplifying the interest rate calculation.* It provides that for all tax *claims* (federal, state, and local), including administrative expense taxes, the interest rate shall be determined in accordance with applicable nonbankruptcy law.

H. Report No. 109–31, § 704, to accompany S. 256 109th Cong., 1st Sess. 2005, p. 101 (emphasis added). There is no evidence in the legislative history with respect to the enactment of § 511 which indicates that Congress cared at all about preventing any "distinction between bankruptcy and non-bankruptcy debtors." Rather, the legislative history indicates that the purpose of § 511 was to prevent debtors from proposing varying interest rates to be paid on tax claims. Congress's intent in enacting § 511 was to prevent exactly what the debtor is trying to do in this case.

*Kanter* also does not support the *Collier* court's conclusion regarding the Congress' intent with respect to § 511. *Kanter*, which was decided under the Bankruptcy Act, was another case that involved the constitutionality of a statute that exempted certain property from the reach of a bankruptcy trustee. In *Kanter*, the statute at issue was Cal.Civ.Proc.Code § 688.1(b), which permitted judgment creditors of a debtor to obtain a lien on a debtor's cause of action, but which also limited the power of an "assignee by operation of law," which limitation was intended by the California legislature to prevent the trustee in bankruptcy from administering the asset as property of the bankruptcy estate. The *Kanter* court held that the state statute was an impermissible attempt to circumscribe the powers of the bankruptcy trustee under § 70 of the Bankruptcy Act, 11 U.S.C. § 110(a)(5), (c), and, as an "obstacle to the accomplishment an execution of the full purposes and objectives of Congress," violated the Supremacy Clause and was invalid. *Kanter*, 505 F.2d at 231. *Kanter* does not involve an analysis of the phrase "applicable nonbankruptcy law," nor does

4. The court notes that *Collier* was decided before the Ninth Circuit Bankruptcy Appellate Panel in *Applebaum* decided that California's bankruptcy-specific exemption scheme was constitutional and not preempted by the Supremacy Clause.

it involve an analysis of a statute that included provisions that were specific to *debtors* in bankruptcy as opposed to *debtors* not in bankruptcy. While *Kanter* is useful as an example of the application of Supremacy Clause analysis generally, its specific utility in interpreting Congressional intent with respect to § 511 highly questionable.

If neither the legislative history nor *Kanter* clearly support Collier's conclusions regarding the intent of Congress in enacting § 511, this court can only conclude that the *Collier* court derived Congressional intent from the language of the statute itself, i.e. the *Collier* court concluded that the reference to "nonbankruptcy law" in § 511(a) is evidence of Congressional intent to limit the authority delegated to the states by § 511(a) to statutes that are not "bankruptcy specific." *Collier*, however, cites no authority that supports such an interpretation of the phrase "applicable nonbankruptcy law" with respect to § 511 and, for the reasons discussed *infra*, this court does not adopt such an interpretation.

█ In addition, the debtor's contention that application of RTC § 4103(b) in bankruptcy cases causes non-uniform treatment of debtors and nondebtors is not persuasive. First, because RTC § 4103(b) provides that the 18% redemption penalty of RTC § 4103(a) constitutes the assessment of interest for the purposes of a claim in bankruptcy, without any modification to the percentage itself, a debtor in bankruptcy will ultimately pay the same amount on a debt for delinquent taxes that a non-debtor will pay. In that respect, debtors and non-debtors a treated uniformly.

Second, the debtor's primary example of different treatment of debtors and nondebtors is that debtors is that debtors who would pay an 18% interest rate on tax claims would be allowed to claim a deduction of the amount of interest paid on their federal taxes pursuant to Internal Revenue Code § 163, which allows taxpayers to claim a deduction for interest on indebtedness, while non-debtors who paid a redemption penalty would not be allowed to claim such a deduction. The debtor asserts that there do not appear to be any Tax Court cases addressing this issue, but the Tax Court has in fact held that California real property tax redemption penalties paid by non-bankruptcy taxpayers are deductible in the taxable year in which they were paid. *Reinhardt v. Commissioner of Internal Revenue*, 75 T.C. 47, 52 (1980):

> That leaves for our consideration only the 1–percent–per–month redemption penalty. This charge, which accrued like interest over time, was, in effect, for the forbearance of the State. During the 5–year redemption period, California allowed petitioners to retain the amount needed to redeem the property without fear of losing their right of redemption. *Regardless of the fact that California deems this item a "penalty," it has the characteristics of interest and we will treat it as such.* Cf. *Meilink v. Unemployment Reserves Comm'n*, 314 U.S. 564 [62 S.Ct. 389, 86 L.Ed. 458] (1942); *United States v. Childs, supra* [266 U.S. 304, 45 S.Ct. 110, 69 L.Ed. 299 (1924)]; Rev. Rul. 60–127, 1960–1 C.B. 84; Rev. Rul. 60–128, 1960–1 C.B. 85.

The court is aware that, in contrast to the finding in *Reinhardt*, in 2001 the Ninth Circuit Court of Appeals in *Fed Deposit. Ins. Corp. v. County of Orange (In re County of Orange)*, 262 F.3d 1014 (9th Cir.2001) found that with respect to RTC § 4103(a) that the statute was clear on its face and that "redemption penalties are just that, penalties, and not interest." *Id.* at 1021. *County of Orange* involved a bankruptcy dispute between the Federal Deposit Insurance Corporation ("FDIC")

and the County of Orange, which was a debtor in a bankruptcy case under chapter 9. The FDIC had paid under protest property-tax penalties assessed against a bank in receivership and was seeking a refund of the amount paid, as under 12 U.S.C. § 1825 the FDIC was not liable for pre-acquisition penalties not secured by a lien. *Id.* The Ninth Circuit held for the FDIC, finding that redemption penalties are penalties and not interest. It agreed with the FDIC that "18% a year is far above any standard assessment of 'interest,' giving a redemption charge the traditional punitive aspect of a penalty." *Id.* Since California law did not create a lien for these penalty amounts, but would have for interest charges, the FDIC was entitled to a refunds.

In response to the *Orange County* decision, in 2002 the California legislature expanded Cal. Rev. & Tax Code § 2187 to state that "every tax, penalty or interest, including redemption penalty or interest, on real property is a lien against the property assessed." Cal. Bill Analysis, S.B. 1494 Assem., June 26, 2002. The use by the legislature of "redemption penalty or interest" in § 2187 is evidence of the legislature's intent and belief that the redemption penalties be and are effectively an interest rate.

Third, the debtor also argues that Rev. & Tax Code § 4103(b) is rendered unenforceable by the Supremacy Clause because RTC § 4103(b) is an attempt by the California legislature to thwart the priority scheme of Bankruptcy Code § 726. Although the debtor does not so state, the court believes that the debtor derives his argument from an unpublished memorandum decision of the United States Bankruptcy Court for the Northern District of

California issued on July 24, 2000 in the chapter 7 case of *In re Shako Real Estate Management, Inc.*[5] (the "*Shako Decision*"). In the *Shako Decision*, the bankruptcy court characterized RTC § 4103(b) as an "attempted bankruptcy carve-out" which reflected

> an attempt by the state legislature to avoid the priority scheme of Bankruptcy Code section 726 (in particular, subsection 726(a)(4)). To the extent that section 4103 adopts a bankruptcy-specific exception, it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress and is pre-empted by federal bankruptcy law.

*Id.* The bankruptcy court held that § 4103(b) was in direct conflict with § 726 because by re-labeling the penalty portion of a tax claim as interest it allowed a county tax collector to have as part of its allowed secured claim the amount of the unpaid taxes due as well as the "interest," rather than having the penalty portion subordinated to general unsecured claimants pursuant to § 726(a)(4).

The *Shako Decision*, however, was decided prior to the enactment of 11 U.S.C. § 511, which, as discussed above, expressly authorized state legislation which set an interest rate to be paid on tax claims. Section 511 does not contain a limitation that the interest rate set by the state be a "reasonable" rate to be determined by prevailing economic circumstances at the time that a bankruptcy case is filed. It allows the states to set an interest rate for tax claims in bankruptcy cases; that California chose, even before the enactment of § 511, to set a rate via RTC § 4103(b) that is effectively and functionally identical to the

---

**5.** The court could not locate this memorandum decision in the major online legal publishers. It is available on the Northern District's web site at http://www.canb.uscourts.gov/print/896.

rate paid by non-debtor taxpayers is evidence that the state's intent matched that of Congress: to eliminate uncertainty with respect to interest rates on real property tax claims by making all persons owning real property in California, debtor and non-debtor alike, ultimately pay the same amount of money on unpaid real property tax claims.

## CONCLUSION

Because the court does not agree that the reference to "applicable nonbankruptcy law" in § 511 limits states to establishment of an interest rate for unpaid tax claims in bankruptcy via statutes that are not bankruptcy specific, the court finds that RTC § 4103(b) does not actually conflict with 11 U.S.C. § 511(a). Nor is this a situation where Congress has expressly preempted a state's ability to legislate the interest rate on unpaid tax claims or regulated so pervasively that it "occupies the field." This is, in fact, a situation where Congress has expressly and concurrently authorized state legislation on the matter, thus inviting the states to "preempt" federal law with respect to the calculation of interest on secured claims for unpaid taxes. For the foregoing reasons the court finds that RTC § 4103(b) is not invalid as violative of the Supremacy Clause and will sustain Rabobank's and the County's objections. The debtor must pay the County's secured claim in full at a rate of 18% per annum. Confirmation of the Plan will be denied.

Having determined that RTC § 4103(b) is not unconstitutional and that the debtor must propose a plan that pays 18% per annum on the County's secured claim, the court need not reach the alternative argument made by Rabobank; i.e. that if RTC § 4103(b) is unconstitutional, the County could include the 18% redemption penalty as part of its secured claim pursuant to § 506(b).

Finally, because confirmation of the Plan will be denied for the reasons set forth above, the court does not reach Rabobank's objections under 11 U.S.C. § 1325(a)(6) regarding the feasibility of the Plan at this time.

The court will issue a separate order sustaining Rabobank's and the County's objections and denying confirmation of the Plan.